Iglehart *v.* Jernegan.

- - - - - - - ♦ ♦ ♦ - - - - -

16   513
181   328

NICHOLAS P. IGLEHART, impleaded, etc., Plaintiff in Error, *v.* JOSEPH L. JERNEGAN, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

It is proper for a witness who is testifying as to the admissions made by a party, to embody in his deposition, a certified copy of a bill of exceptions taken at another trial, to which he has referred to refresh his recollection, as showing the substance of the admissions sought to be proved as he now remembers them. That the admissions made, were sworn admissions, does not make a difference, nor need it be shown by record evidence, that a trial was had, in which the bill of exceptions was taken.

Where the defense to an action upon an assigned note, is that the defendant was a mere accommodation drawer, an account which had been exhibited by the party in interest, on another trial between himself and others, which explained the transaction from which the note now sued on, originated, is proper evidence for the jury.

Letters from attorneys, addressed to their clients, are not admissible as evidence in another case between other parties, to show the fact that the money sued for, was sought to be recovered from other parties.

It would seem that the substance of what a deceased witness had sworn to, is proper, and that the precise words need not be proved.

THIS is an action brought upon certain promissory notes, signed by the defendants, and payable to the order of Vance and Smith. It is admitted of record, that the said notes were assigned to the (nominal) plaintiff, Jernegan, (who was attorney of Vance and Smith,) after said notes were due.

The defense is, that the defendants became parties to these notes, *for the accommodation* of the real plaintiffs, Vance and Smith, and received from them no consideration therefor.

The notes sued on, together with divers other notes and drafts, now in suit, were all given in renewal of or in substitution for two certain bills of exchange, each dated January 5, 1846, and drawn by N. P. Iglehart & Co., to the order of N. P. Iglehart, on Cruse and Lippencott, of Baltimore, Mary-

33

land, and accepted by them, one for the sum of $6,666.66, due June 5—8, 1846, and one for the sum of $6,666.67, due July 5—8, 1846, payable at Baltimore, and dated at Cincinnati, Ohio.

It is not denied that the paper sued on was a part of the paper given in renewal of or substitution for these two original drafts.

These two original acceptances, the defendant claims, were given in part payment of the agreed price of a large number of hogs, which were sold on or about the 26th of December, 1845, by the real plaintiffs, Vance and Smith, to the firm of Cassards, of Baltimore, of which house the firm of Cruse and Lippencott were claimed to be partners, and that the defendant, Iglehart, had no interest in said purchase or sale, and was no party to the same, and received no portion of the said consideration. That at the time of said sale, the defendant was a pork packer and broker, and his business was to negotiate sales and purchases of pork between different parties, and to cut up and pack the pork for the purchasers, he having no interest in the transaction, beyond securing his commissions and charges, as such broker and packer.

The original drafts before mentioned, were given to the real plaintiffs, Vance and Smith, and were by them discounted at the Branch Bank of Indianapolis, and the defendant claims that he was made a party to said paper upon the requirement of further names by said bank on said paper, as a condition of its being discounted at said bank for said Vance and Smith.

It appears by the testimony of A. H. Van Buren, that from 1845 to 1847, the defendant, N. P. Iglehart, was a pork packer in Cincinnati, Ohio. That he went into the milling business between 1847 and 1849, and was a partner in interest in the Union Mills, as large and flourishing a flouring mill as there was in said city. After 1849, said Iglehart went into the banking business, and continued therein until he left Cincinnati. In this business it was understood he was unsuccessful. He continued to reside in Ohio until he removed to Chicago, some time about the year 1852 or 1853. The accepters of said drafts resided in Baltimore. It appears that the real plaintiffs, Vance and Smith, were in business dealings and intercourse with Iglehart, for several years after said drafts were given, and that until said Iglehart's removal to Chicago, he was within convenient access to them, for the purpose of suit or otherwise.

The defendant, for the purpose of showing that he became a party to the original drafts on which his name appears, offered in evidence the statement of Thomas M. Smith, one of the said real plaintiffs, which statements were made by him as a witness

for the defendant, Iglehart, in the trial of an action between said Iglehart and said Cassards, in which action the amount due to said Iglehart from said Cassards, for the packing, etc., of the same hogs for which the original acceptances were given, was one of the items in dispute.

In this action the said Smith swore in substance that his firm, Vance and Smith, sold certain hogs to the Carsards, in December, 1845 ; that the sale was made through said Iglehart and one of the Cassards. That he had been in the habit of selling to the Cassards through Iglehart. That the two drafts before mentioned, were a part of the consideration given for this sale. That Iglehart cut and packed the pork so sold for the Cassards.

That he had sued the Cassards for the amount represented by these two unpaid drafts, including Cruse and Lippencott in said suit. That he got the drafts so given for said hogs, discounted at the Branch Bank of Indianapolis, and had made an agreement with the president of said bank, to receive the drafts in payment of a debt owed by the said Vance and Smith to the said bank.

That the said Iglehart never rendered an account of said hogs as having been packed for their account. That he inquired as to the credit and responsibility of the Cassards, before he sold the hogs to them, and ascertained it to be good.

This testimony of the said Smith, as given in said suit, was proven by the deposition of R. M. Corwine, the attorney who was engaged in said trial, and by George W. Hoadley, the judge before whom the same was tried. These witnesses, for the purpose of refreshing their memories, refer in their testimony to an extract from the bill of exceptions made in said cause, and annexed by each of them to their depositions, and containing the evidence of the said Smith, in full.

R. M. Corwine swears, that the said Smith was examined in said suit, and did depose in substance as is set forth in the said extract from the bill of exceptions, and that the same contains his testimony in substance ; that he has the notes taken by him on the trial, and they agree with that statement ; and that he adopts that extract as a part of his answer to the question, as to what said Smith swore to, and in so doing has stated it in substance. Judge Hoadley swears, that the said extract contains the substance of the testimony given by said Smith. That he has carefully perused the same, and that it is correct, and that while he should not be able, from recollection alone, to give the substance of Smith's testimony, yet he recollects with sufficient distinctness, to be able now to say, that this extract from the bill of exceptions, is substantially correct.

The court refused to allow the said testimony of said Smith to be read in evidence.

The said Corwine further swore, that the said Vance and Smith sued the Cassards for the price of said hogs for which the said two drafts were given. That said suit was brought upon a certain account, a memorandum of the terms of sale and parties liable to said action furnished by the plaintiffs in said suit; that the said witness, Smith, had said paper in his hands, and referred to it while examined as a witness, as before stated, and swore to its correctness.

The account so sworn to, was made out against the Cassards, and Iglehart & Co. were not included in it; and the said defendant offered the testimony of said Corwine on this point, and the account so proven for the purpose of showing that the said Iglehart was no party in the original sale, and was never so regarded by the said Vance and Smith.

The court rejected both the evidence of Corwine and the account.

The defendant further sought to confirm and establish the fact that he was a mere accommodation party to said paper, for the benefit of said Vance and Smith, by the evidence of a great variety of circumstances and facts tending to that conclusion, viz.: That said Vance and Smith never sued or set up any claim against Iglehart, until the institution of this suit. That they sued one Cassard and Cruse and Lippencott as the purchasers of the pork, and did not include him; that the paper was discounted for them, and the Cassards had no interest in its being signed by Iglehart. That Vance and Smith took the paper on the credit of the Cassards, after inquiry. That it was necessary to them (Vance and Smith,) to have the paper taken by the bank, and whatever further indorsers were obtained, were for their benefit. That said Smith recognized the position of said Iglehart as a mere broker and packer, not interested in the purchase by becoming a witness for him for the purpose of proving his commission and charges, as such packer and broker. That all the remaining consideration for said purchase, excepting these two drafts, was paid by the Cassards. That in the suit brought by them against the Cassards, they relied on said Iglehart as a witness. That they were advised that he could not be used as such, until he was released from his nominal liability on the paper, and that it was understood and agreed that he was to be released. That Smith, with a full knowledge that such release was a pre-requisite to the said Iglehart being witness, did by himself and counsel repeatedly request said Iglehart to become a witness; and so late as November, 1852, the said Smith wrote a letter to the said Iglehart, requesting

him to give his testimony in said suit. That subsequent letters, but a short time prior to the commencement of this suit, were written to Iglehart by the attorneys of Vance and Smith, on same subject. That the present suit was not commenced until after the Cassards, against whom the former suit is still pending, had failed, and was commenced without the knowledge or approval of the attorneys of the said Vance and Smith in that suit.

The answer of Sharp to the within cross-interrogatory, to which exception is taken, is as follows:

" Mr. Iglehart was also at that time anxious, and urged the extension and renewal of the paper, as it was finally given, upon the most positive assurance that it would all be met at maturity, and then also spoke of the matter in no other light than as a debt of his own, or his own and Cruse and Lippencott, and to be by him met," etc.

The first instruction given for plaintiff below, defendant here, was as follows:

" The production of the two notes sued on, makes out the plaintiff's case *prima facie*, if he has satisfied the jury that the issue upon the plea of the statute of limitations is with the plaintiff upon the evidence. The plaintiff having thus made out a *prima facie* case, it rests upon the defendant to show you that he is not liable upon the paper, and this he must do by clear and satisfactory proof. It is not sufficient for the defendant to raise doubts in the case. If he be not liable, that is for him to show you by satisfactory evidence."

The second and third instructions of defendant below, plaintiff here, are as follows:

" If the jury believe, from the evidence, that one of the notes sued on in this case, to wit, the note for $3,300, was given as a substitution for, or to take up other negotiable securities, and that such last named securities are still outstanding, in the hands of the plaintiff, then, in such case, the plaintiff cannot recover on said note, without surrendering said securities for which said note was given."

The third instruction only varied from the second, by saying if the note was still outstanding in the hands of third parties, the plaintiff cannot recover without surrendering the securities for which the note was given.

The cause was tried before J. M. WILSON, Judge, and a jury, at February term, 1855, of the Cook County Court of Common Pleas. Verdict and judgment for the plaintiff in the court below.

ARNOLD, LARNED and LAY, for Appellant.

MANNIERE and WAITE, for Appellee.

SCATES, J. The points made are : improperly excluding the evidence of the declarations or admissions of Smith, one of the assignors, made, as a witness on a former trial, in relation to the transaction for which the notes were given ; also an account showing the same, furnished by Smith ; letters from assignor's attorneys to them about the same ; the admission of Sharpe's reply to ninth cross interrogatory ; giving instructions for plaintiff below ; and refusing the second and fifth instructions of plaintiff here.

The defense set up was, that plaintiff was merely an accommodation drawer for Vance & Smith, the assignors, but real parties in interest here, the note being assigned after due, and for the mere purpose of collection. The suit in which Smith testified, was an action of replevin for part of the pork for which the notes were given, brought by the Cassards, the real purchasers of Vance & Smith, as alleged by plaintiff, and against him. He alleges that he acted merely as factor and packer, and claimed a lien for commissions, etc., as such. He now insists that he is entitled to these statements of Smith, as admissions made on that trial, the account of that transaction as exhibited there by him, and the letters of Vance & Smiths' attorneys, in a suit by them against the Cassards for the same money now sued for, all for the purpose, and tending to show that he is a mere accommodation drawer and indorser of these notes, and the bills of exchange for which they are renewals.

A preliminary question, raised here for the first time, should be disposed of. There is no proof that these notes were assigned after due, or that the true interest in the money is in Vance & Smith, therefore, as the evidence, if admitted, could not change the verdict, no new trial will be granted. 3 Gil. R. 202 ; 3 Barb. S. C. R. 550 ; 14 Ohio R. 502 ; 2 Tenn. R. 4 ; 1 Bos. and Pull. R. 338.

It is answered, that there was some evidence tending to show that the notes must have been overdue, before Vance & Smith re-acquired them from the Bank of Indianapolis. Again, the whole of the proceedings seemed to be conducted upon the assumption and acquiescence in the fact, that Vance & Smith are the beneficiaries. For the purpose of determining upon the admissibility and relevancy of the testimony excluded, we will regard it as acquiesced in, or that it could have been met with proofs, had it been denied on the trial. An authority for this course is found in *Beekman* v. *Bond,* 19 Wend. R. 444, in relation to a very essential fact to the defense. Assignments made after the money became due, will not prevent the payor from making the same defense as if not assigned. Rev. Stat. 1845, p. 385, Sec. 8 ; Byles on Bills, top 484, side 352. And in case

the assignee stands upon the title of the prior holder, then the declarations and admissions of such assignor or prior holder are evidence against him. Ibid.; 1 Greenleaf Ev., Sec. 190; *Hatch* v. *Dennis,* 10 Maine, 246; *Shirly* v. *Todd,* 9 Maine R. 84; 2 McCord R. 241; *Shaw* v. *Broom,* 4 Dowl. and Ryl. R. 730, (16 Eng. C. L. R. 221); *Coster* v. *Symons, alias Sherwood,* 1 Carr. and Pay. R. 148, (12 Eng. C. L. R. 95); *Haddan* v. *Mills,* 4 Carr. and Pay. R. 486, (19 Eng. C. L. R. 489.)

These admissions or statements were therefore clearly admissible. It was not for the court to determine what they would prove, but only whether they would tend to prove the issue; if so, they should have been left to the jury, and this has been so repeatedly ruled by this court. 5 Gil. R. 298, 573; 12 Ill. R. 195; 14 ibid. 182; 15 ibid. 251.

Again, it is objected to it, because it will not establish the fact that plaintiff was an accommodation drawer and indorser, but that he, as agent or factor of Cassards, drew these bills on Cruse & Lippencott, and gave them in payment to Vance & Smith, and, such being the fact, he will be liable, although but an agent. This is true, to a great extent. See Story on Agency, Secs. 256 to 259, 261. And he might be liable to third persons, when as between him, as drawer, and the payee of the bill, it might be shown that he became the drawer, at the instance of the payee, the better to enable the latter to negotiate it for his accommodation. We should not, therefore, determine what the evidence really establishes, but that it tends to establish the cause of action or defense, and leave it to the jury.

Again, it is objected that the admissions are contained in a bill of exceptions in a case in Cincinnati, and are matters of record, and can only be proven by a properly certified copy of the record. And so is the law, in relation to matters of record, as applicable to proof of what a deceased witness swore on a former trial, (*Beals* v. *Guernsey,* 8 John. R. 446); or contents of declaration not filed, (33 Maine R. 213); or the conviction of the party in another State, (15 Ohio R. 224); or title to land, (6 Eng. Ark. R. 23); or the fact of a trial, and matters in issue, (9 Gill. Md. R. 9 to 19; 17 Ohio R. 156.) But the production of the postea will be sufficient to let in proof of testimony of a deceased witness, (1 5th 162.) But objection for want of it must be taken at the trial, or it will be considered as waived. 8 John. R. 446, note a; and see 11 John R. 128; 17 ibid. 176; 6 Cowen R. 162; 2 John R. 20.

But it might be questionable whether this record could be read against Smith for any purpose, and less so as to admissions. Defendant seems to mistake a reference to the bill of exceptions, certified by the clerk, for authenticity to the witness, for the pur-

pose of refreshing his memory, as and for an attempt to read it as a bill of exceptions, and part of the record. It was not offered as a record, or part of a record, nor is it necessary to lay any such foundation for proving these admissions, as such. The question, and the reason upon which it rests, is very different from that upon which the testimony of a deceased witness is placed. The statement of a deceased witness would be upon the footing of mere hearsay, unless it be shown that there was a trial, and that he was sworn. Admissions are not obnoxious to either objection. Admissions and confessions need not be under oath, nor is it requisite that there should be any trial. Yet statements made under oath, when testifying as a witness in a cause, may be proven as admissions. And, for that purpose, it is wholly unnecessary to prove the existence of the trial and oath. Yet allusion may be made to these, to fix the time, place and circumstances of the admission, without record evidence of these facts. The trial, etc., are mere incidentals, *res gestae*, of the main fact, that is, the confession or admission. It is in this sense I understand the witnesses to allude to the trial, bill of exceptions, etc., here, and to show the character and reliability of the notes or memorandums from which they refresh their memories. The clerk extracted and certified to them this portion of the memorandums, that they might rely upon its accuracy without examining and comparing it with the original minutes. They used them, refreshed their memories, recollected the facts, swore that the substance was fairly set out in the memorandums, and desired that it should be made, taken, and set out in the deposition, as their answer, and statement of the admissions of Smith, embracing all he said on that occasion. The authentication of the bill of exceptions might well have been left out, as being no part of witness' answer; it was, doubtless, copied in to show that the answer had been faithfully copied into the deposition.

The same distinction between admissions offered against the party who made them, although made on oath as a witness in a trial, and proof of the testimony of a deceased witness, will hold, in relation to the next point discussed in this case, and the authorities referred to in support of it. In relation to the testimony of deceased witnesses, one class of authorities, with very specious and plausible argument and reasons, hold it necessary to prove the precise words, and all that was sworn upon the chief and cross-examination, *ipsissimis verbis*. Shaw, C. J., has given a very lucid and able argument, and forcible reasons, in support of this rule, in *Warren et al.* v. *Nichols*, 6 Metc. R. 264. He cites and approves *The Commonwealth* v. *Richards*, 18 Pick. R. 434, and thinks Mr. Greenleaf had overlooked that

case when laying down a different rule in his Treatise on Evidence, 1 Greenl. Ev., Sec. 165. Both have since been referred to in a note to that section, and a full extract from the opinion in *Warren et al.* v. *Nichols*, without alteration of the general rule that the substance will entitle it to be heard. Judge Carr, in *Caton, etc.*, v. *Lenox, etc.*, 5 Rand. R. 35, goes into a general examination of authorities in support of the latter rule, and sustains it with much force and reason, and we think the better reason from analogy to other business transactions, and contracts depending on memory of witnesses, and oral testimony, is in its favor. The same reasoning might, with the same justice, exclude the substance, and require the precise words of all contracts and admissions.

I do not intend to review the authorities on these two different rules, which have been so ably discussed on each side in the cases above referred to, but simply refer to several on each side, and so leave it. In favor of the rule allowing the substance of the testimony, I refer to *Marshall* v. *Adams*, 11 Ill. R. 40; *Miles* v. *O'Hara*, 4 Binn. R. 108; *Cornell et al.* v. *Green, administrator*, 10 Serj. and Rawl. R. 15; *Chess* v. *Chess et al.*, 17 Serj. and Rawl. R. 409; *Noble* v. *McClintock*, 6 Watts and Serj. R. 58; *Haven* v. *Wendell*, 11 N. Hamp. R. 114; 10 Humph. R. 479; *Walker* v. *Walk*, 14 Ga. R. 249; 1 Spencer R. 66; 5 Verm. R. 175; 21 Verm. R. 380; 15 Wend. R. 193, and others referred to; 5 Rand. R. 35; and 1 Greenl. Ev., Sec. 165, and references. For precise words, cases referred to in 6 Metcalf R. 264; 1 Greenl. Ev. 165, note 2; 4 Tenn. R. 290; 3 Wash. C. C. R. 440; 6 Cow. R. 165; 7 Blackf. R. 11.

The witnesses here testify from recollection, when refreshed by this memorandum, which is not offered here or incorporated as notes of the case, but the facts in it are adopted and sworn to, as the substance of the facts within their recollection; this is enough. *Green* v. *Brown*, 3 Barb. S. C. R. 123; *Bank of Utica* v. *McKinster*, 11 Wend. R. 477.

The depositions, in relation to these interrogations and answers, should have been left to the jury. So, we think, in relation to the account recognized and used by Smith in that case, as tending to prove matters in issue in this case, by showing the real parties to that sale of hogs.

We think differently in relation to the letters from Vance & Smith's attorneys to them. The letters would show nothing relative to the question, if even otherwise admissible, as Iglehart was, under the statute of Ohio, a competent witness, his interest going only to his credit. *Lawson et al.* v. *The Farmers' Bank of Salem*, 1 McCook (21) Ohio R. 206.

The answer of Sharpe to 9th cross-interrogatory, contains, in part, mere matter of opinion and inference of the witness, which should have been excluded.    Witnesses should confine themselves to the statement of facts, or the words or substance of the statements of the parties.   *Marshall* v. *Adams*, 11 Ill. R. 41; *Hoitt* v. *Moulton*, 1 Foster N. Hamp. R. 588.

The first instruction for defendant is erroneous; it is not such a case as calls for such an instruction.   It was the duty and province of the jury to find the issues upon satisfactory proof of the facts.   It was not the province of the court to say the proof must be *clear* as well as satisfactory, nor to interfere with the doubts of the jury in advance.   It is not a case for the application of the doctrine of doubts from the court.

The second and third instructions asked by plaintiff should have been given.   The question was settled in principle in *Lewis*, 16 Ill. R.   See *Burdick* v. *Green*, 15 John. 247.   The other instructions were properly given and refused to the respective parties asking them.

Judgment reversed, and cause remanded for new trial.

*Judgment reversed.*