(No. 26392.—

THE PEOPLE *ex rel.* Russell Tyson *et al.* Appellants, *vs.* EDWARD J. KELLY, Mayor, *et al.* Appellees.

*Opinion filed March 16, 1942.*

Shaw, J., specially concurring.

Scott, MacLeish & Falk, (Cranston Spray, Robert S. Cushman, and Winfield T. Durbin, of counsel,) for appellants.

Barnet Hodes, Corporation Counsel, William H. Sexton, and Frank S. Righeimer, (Alexander J. Resa, and Frank S. Righeimer, Jr., of counsel,) for appellees.

Mr. Justice Stone delivered the opinion of the court:

This cause arose on a petition for writ of *mandamus* filed by appellants in the superior court of Cook county against the city of Chicago and its officials, seeking to compel the institution of proceedings under the Eminent Domain act to ascertain damages to and the cost of protective measures for appellants' building, arising out of the construction of Dearborn street subway in the city of Chicago. Appellees answered and filed a motion to dismiss the petition, which was sustained, and the petition dismissed. The cause comes here on direct appeal since it involves the construction of section 13 of article II of our constitution.

The facts pleaded in the amended petition are that appellants' building, known as the Monadnock building, is situated on Dearborn street, under which the subway is being constructed. It is a seventeen-story building of fireproof construction. Its walls are six feet thick at the base and two feet thick at the top. These walls are supported by

heavy piers, which in turn rest upon a so-called floating or spread foundation. Below this foundation are mats resting on a stratum of yellow clay about fifteen feet below the street level. Under this yellow clay is a stratum of blue clay which is soft and sticky and which, when not confined, will flow. The subway was built in this blue clay adjacent to appellants' building. The process by which the clay was removed was by use of what is known as an hydraulic shield. At the time of the hearing in this cause the construction had passed appellants' building on Dearborn street.

The amended petition further avers that before the starting of the subway construction, appellants conferred with the architects and engineers whose predecessors had designed and supervised the construction of the building, and these engineers, after examination, were of the opinion that the removal of the blue clay from Dearborn street would cause the flowing or slipping away of such clay from beneath the building foundations, rendering the building structurally unsafe, and they recommended protective action such as shoring and installation of columns and piers to prevent damage to the building and estimated the expenditure involved to be about $210,000.

The amended petition further alleges that the appellants gave notice to the city of these findings of the engineers and called upon it to take protective measures, but that the city and the subway contractor gave notice to appellants denying any liability on their part to take such protective measures, or for damage to appellants' property in the absence of negligence. A request that the city start eminent domain proceedings to determine what damages would result from the construction of the subway, was likewise, for that reason, refused. It is also alleged that as it appeared to the appellants that the subway construction would reach appellants' property before a hearing on the petition was had, appellants proceeded to install protective measures at the cost of over $225,000. Their amended petition also

asserts that because of pressure exerted by the hydraulic excavation shield and the force of explosives used, damage was caused to the Monadnock building by breaking pipes, cracking plaster, breaking the floor in the basement, damages to curb walls and cracking and separating the sidewalk from the building.

The first question presented is whether appellants can require the city of Chicago to institute proceedings under the Eminent Domain act where the result of the public improvement is not an actual or physical taking of appellants' property but damages it, only.

Appellants rely mainly upon four decisions of this court as establishing their right to the relief sought here. The first of such cases is *Noorman* v. *Department of Public Works and Buildings,* 366 Ill. 216, where it was held that the plaintiff could not require the department, a governmental agency of the State, to institute proceedings to ascertain compensation for damages caused to his property by the erection of a viaduct, because of the constitutional prohibition against suing the State. The plaintiff there urged that if he were not, under the constitution, allowed to sue the Department of Public Works and Buildings, then one provision of the constitution was being used to defeat another, that is, the constitutional provision for eminent domain action. It was held, however, that while the appellee might have enjoined the Director had he proceeded without *laches,* there was no action to be had against the State, as such is prohibited by section 26 of article IV of the constitution.

*People ex rel. First Nat. Bank, Admr.,* v. *Kingery,* 369 Ill. 289, was an action against the Director of the Department of Public Works. and Buildings, to compel him to institute proceedings under the Eminent Domain act or some other proceedings for the purpose of ascertaining just compensation for damages to lands owned by the petitioner but not taken for a public road improvement. The damage com-

plained of arose out of the change of the level of two roads at their intersection, cutting off ingress and egress to petitioner's land which abutted upon both roads. The defendant contended that eminent domain would not lie because the injury had already occurred and because no property of the plaintiff was taken. It was apparent to the court, however, that unless the relief there sought be granted, none existed, since suits against the State are prohibited. Of course the Director could not be required to personally respond in damages. Counsel for appellants here argue that this case is a modification of the rule laid down in previous cases in which it had been held that for his damages to land not taken the landowner is remitted to an action at law. This court, in the *Kingery case*, quoting section 19 of article II of the constitution, which provides that "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay," held, that under the facts of that case, and since section 13 of article II of the constitution assures compensation for property damaged as well as that taken, petitioner should be held entitled to a *mandamus* writ against the Director to compel eminent domain proceedings; that as a common law action may not be maintained against the State, *mandamus* against the Director was the only remedy open to the petitioner, and to hold that petitioner did not have that remedy would be to render ineffective the provisions of the constitution cited above herein. The opinion in that case does not purport to overrule the cases theretofore decided by this court, and, as applied to the facts of that case, it is correct. The remedy by it supplied to a property owner is the only remedy he has in such factual situations, and this court is empowered in such a case to render effective the mandate of section 19 of article II of the constitution.

Counsel for appellants also rely upon *Grunewald* v. *City of Chicago,* 371 Ill. 528. That was a common law action for damages occasioned to lands of plaintiff by reason of the change of grade of streets. Judgment was entered against the city and on consideration of a direct appeal to this court, on the ground that the action was in the nature of a condemnation suit under the Eminent Domain statute, it was held that as the case was a common law action for damages, this court had no jurisdiction on direct appeal and the cause was transferred to the Appellate Court. In discussing the cases relied upon in support of the contention that this court had jurisdiction on direct appeal, it was stated, citing the *Kingery case,* that "It is the duty of a municipality constructing a public improvement, before making the same, to settle damages, if any, to adjacent property not taken by the improvement, and if such settlement cannot be made, to institute proper proceedings under the Eminent Domain act to ascertain such damages, and the officer or officers having control of the improvement may be compelled by *mandamus* to institute such proceedings." As applied to cases arising out of the construction of a public improvement by the State, this statement is correct, and the citation of the *Kingery case* is in point. The *Kingery case,* however, did not deal with a public improvement constructed by a municipality and did not purport to overrule the long line of cases extending back as far as *Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74. As the only question passed upon in the *Grunewald case* was the jurisdiction of this court, the language quoted above was unnecessary to the decision of that case, was therefore *obiter dictum* and, furthermore, as applied to municipalities, was wrong. A judicial opinion must be read as applicable only to the facts involved and is an authority only for what is actually decided. *People ex rel. Schuler,* v. *Chapman,* 370 Ill. 430; *White* v. *Seitz,* 342 id. 266.

*People ex rel. O'Meara* v. *Smith,* 374 Ill. 286, also cited by the appellants, considered the validity of an act effective July 11, 1939, which vested exclusive jurisdiction over claims for damages, such as the one in that case considered, in the court of claims. The act was held invalid on authority of the *Kingery case.*

Since the early case of *Stetson* v. *Chicago and Evanston Railroad Co. supra,* the rule has been that the owner of land taken may, in condemnation proceedings, by cross-petition in that proceeding, recover damages to contiguous land not described in the petition, (*Metropolitan West Side Elevated Railroad Co.* v. *Johnson,* 159 Ill. 434; *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 id. 316,) but we are not considering such a case here. An abutting property owner is not entitled to have condemnation proceedings instituted to determine damages to his property occasioned by public improvement where no part of his property is taken. That case was an action in equity for an injunction to enjoin the construction of a railroad along the street abutting the plaintiff's property until plaintiff's damages had been assessed and paid under the Eminent Domain act. It was there pointed out that the use of the street for such purpose, having been permitted by law, and the plaintiff having a remedy in an action at law for his damages, there was no warrant for equity proceedings. It is there also pointed out that the railroad company denied that the owner of the adjacent land sustained any damage, and it would be absurd to require the railroad company to file a petition alleging that the owner had sustained damage when such damage is denied.

Counsel for appellants say that the *Stetson case* and others cited by appellees are based on a denial of damages by the municipality, whereas in this case they say the motion to strike appellants' amended petition admits the charge that appellants' property is damaged. Aside from the applicability of the rule that conclusions are not admitted in

a motion to strike or dismiss, averments of the amended petition admitted by motion to strike can scarcely be said to show admission of damage. They set out that the defendants denied any damages to the plaintiffs' property and refused to institute proceedings. This is a fact charged in the petition and admitted by the motion to strike.

Counsel for appellants also point out that the *Stetson case, Childs & Co.* v. *City of Chicago,* 279 Ill. 623, and cases of like character, were actions in equity for injunction, and argue that while equity will not enjoin a proceeding where the plaintiff has a remedy at law, *mandamus* may issue even though the plaintiff has another remedy. Whether an injunction or *mandamus* writ should issue, depends upon the character of plaintiff's right. In *County of Mercer* v. *Wolff,* 237 Ill. 74, it was held that damages resulting to an abutting property owner, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act, but he is remitted to his action at law for damages. The same rule is also announced in *South Park Comrs.* v. *Ward & Co.* 248 Ill. 299, *Bay Bottoms Drainage District* v. *Cache River District,* 295 id. 301, and in *Doane* v. *Lake Street Elevated Railroad Co.* 165 id. 510. In *Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342, it is pointed out that the provisions of section 13 of article II of the constitution, providing just compensation for taking or damaging property, are fully complied with if plaintiff be given an action at law where none of his property is taken, or is made defendant in an eminent domain proceeding where his property is actually taken. This court there said: "In either case the right to damages is the same and is based on the present constitutional provision." In *Bradbury* v. *Vandalia Drainage District,* 236 Ill. 36, which was an action on the case for damages for overflow to land, this court said: "If a drainage district actually takes land, compensation must be made before

the land is appropriated, and if the district concedes that damage will result to lands such damages may be assessed under the law of eminent domain; but if the district does not concede, in the first instance, that damage will result, an action on the case is an appropriate remedy to determine the question whether lands will be damaged and to recover the damages."

In *White* v. *Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620, White, by a cross-petition, sought damages to a tract of land separate from that sought to be taken, and sought to introduce evidence of such damage. It was held that the trial court properly excluded such evidence of damage, as such was a proper subject of an action at law for damages. In *Parker* v. *Catholic Bishop of Chicago*, 146 Ill. 158, it was pointed out that section 13 of article II of the constitution does not require the ascertainment and payment of damages as a condition precedent to the right of exercise of the power of eminent domain where no part of the land or property of the complaining owner is physically taken. That rule has been recognized in numerous other cases decided by this court. *Illinois Power and Light Corp.* v. *Talbott*, 321 Ill. 538; *Penn Mutual Life Ins. Co.* v. *Heiss*, 141 id. 35.

The fact that by the Eminent Domain act the General Assembly has not required that damages to property not taken shall be ascertained by eminent domain proceedings prior to the appropriation of property to be taken, does not leave the owner of the property not taken without a remedy as he has an action for recovery of damages. As was pointed out in *Penn Mutual Life Ins. Co.* v. *Heiss, supra,* it is not important that the General Assembly failed to provide, in the Eminent Domain act, for the assessment of damages to lands not taken by the sovereign power. While it became necessary to prescribe the mode of ascertainment of compensation in cases where the property was

to be appropriated to public use, "no such necessity existed when there was not a physical taking or appropriation, for the reason that the common law furnished ample means for the ascertainment of the damages done the property not so entered upon or taken."

Appellants also contend that there was here an actual taking of their property. The charge in the amended petition is that there was a physical invasion due to the fact that the blue clay underlying appellants' property, because of the great pressure exerted, flowed away from the shield, raising the surface of the street and in many cases lifting the basements and foundation of abutting buildings. There is no charge that the basement and foundation of appellants' building were raised but the amended petition charges that as a result of the advancing of the shield past appellants' property, the basement floor was cracked, street curb walls were cracked, there was a breaking and loosening of mortar boards, and the curb wall was raised and later subsided somewhat below its original position.

In support of their contention counsel cite *Nevins* v. *City of Peoria,* 41 Ill. 502, *Rigney* v. *City of Chicago,* 102 id. 64, and *Elser* v. *Village of Gross Point,* 223 id. 230. The *Nevins case* was an action for damages to the plaintiff's property caused by the overflow of surface waters upon his property in times of rain, due to a change in the grades of streets. There is no such invasion of plaintiff's property charged here, and that case can scarcely be considered authority for the contention that appellants' are entitled to *mandamus* to compel eminent domain proceedings. The *Rigney case* was likewise a common law action for damages alleged to have been sustained by reason of the construction of a viaduct which cut off access to plaintiff's premises. The principal question in the case arose over an instruction. It was held that under the constitution of 1870, which directed that compensation be paid for dam-

ages, as well as for property taken, plaintiff under the facts of that case was entitled to compensation for damages to his property by reason of the improvement. That case can scarcely be taken as authority for appellants' contention here that they are entitled to have such damages determined by eminent domain proceedings.

The *Elser case* was a bill for injunction seeking to restrain the village from making certain contemplated changes in a culvert or waterway, the allegations being that such would cause an increased amount of water to flow upon his land. It was held that while a court of equity will not take jurisdiction to enjoin the making of a public improvement where property is not actually taken, yet if the threatened act involves an actual taking, an injunction may issue. In that case an injunction was awarded on the ground that the owner of an easement may not materially increase the burden upon the servient estate, and thus invade the property, without providing for compensation by eminent domain proceedings as contemplated in the statute.

In *Springer* v. *City of Chicago*, 308 Ill. 356, also cited by appellants, the plaintiff sought to enjoin the city from constructing a sewer upon his premises without first instituting eminent domain proceedings. This was clearly a case of invasion and taking of plaintiff's property.

We are of the opinion that the case before us does not, on the facts alleged, bring plaintiff's case within the definition of a taking of property by invasion, as in the two cases last cited. The charge is that by reason of the character of this blue clay and the force of thrusting the shield through it, the blue clay moved against the foundations of appellants' building and broke water pipes, cracked the basement floor and raised some portions of the street curbing, and after the shield had passed and the subway tunnel was constructed, the curbing subsided. While it is competent to consider such as elements of damage to the property, it

308

does not constitute such an invasion as to amount to the taking of property. We are of the opinion that the Eminent Domain act does not give to appellants the right to have the writ of *mandamus* issue. Other questions raised need not be considered. The superior court of Cook county was right in dismissing appellants' petition. Its judgment is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHAW, specially concurring: I agree with the conclusion reached but not with all that is said in the opinion.