(No. 68007.—

DELBERT M. PATZNER, Appellant, v. GREGORY W. BAISE, Secretary of Transportation of the State of Illinois, Appellee.

*Opinion filed January 17, 1990.—Rehearing denied April 9, 1990.*

William P. Fearer II, and Elizabeth A. Hegel, of Fearer, Nye, Ahlberg & Chadwick, of Oregon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Michael J. Luke, Assistant Attorney General, both of Springfield, and James E. Dixon, of Dixon, Special Assistant Attorney General, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Delbert M. Patzner, appeals from the appellate court's reversal of the issuance of a writ of *mandamus* by the circuit court of Ogle County directing the defendant, Gregory W. Baise, the Illinois Secretary of Transportation, to institute eminent domain proceedings. (175 Ill. App. 3d 818.) We granted the plaintiff's petition for leave to appeal (107 Ill. 2d R. 315) and now affirm the judgment of the appellate court.

The plaintiff is the owner of an improved parcel of land in Rochelle, Illinois, on which he formerly operated a real estate business. Prior to 1980, the plaintiff's prop-

erty included 69 feet of frontage along U.S. 51 and was bounded on the south by First Avenue. The property was directly accessible to U.S. 51.

In 1980, the Illinois Department of Transportation began a construction project to elevate U.S. 51 above a railroad right-of-way and a number of intersections within Rochelle. The overpass, now designated as Illinois Route 251, extends above the part of U.S. 51 that directly fronts the plaintiff's property. No part of the plaintiff's property was physically taken to complete the overpass, and access to U.S. 51, though no longer direct, continues. Physical access from the location where the plaintiff operated his real estate business to Seventh Street, former U.S. 51, remains unchanged. Due to the overpass, Seventh Street now terminates in cul-de-sacs to the north and south of the property. First Avenue remains unchanged.

Throughout the period of construction, the Illinois Department of Transportation's construction machinery was parked in the parking area in front of the plaintiff's real estate office. The plaintiff alleged in his proceeding for *mandamus* that, as a direct result of the parking of the construction machinery, he relocated his business in December 1983.

The plaintiff claims that the presence of the machinery in the parking lot constituted a taking or damaging under article I, section 15, of the 1970 Illinois Constitution and, as a result, that he is entitled to the payment of compensation through eminent domain proceedings. He complains, too, that the overpass limits access to his property, and he maintains that he is entitled to a jury determination of his damages under the same constitutional provision.

On February 15, 1985, the plaintiff filed his first petition for a writ of *mandamus* to compel the defendant, as the Secretary of the Illinois Department of Transporta-

tion, to institute eminent domain proceedings to compensate him for damages to his property. After the filing and disposition of various motions, the plaintiff filed an amended petition for a writ of *mandamus* directing that condemnation proceedings be instituted. As a ground for the petition, the plaintiff set out that the defendant's construction cut off all practical access to Illinois Route 251 from his property; that light, air, and the view from his property were eliminated; and that the defendant's construction machinery had occupied space on the plaintiff's parking lot throughout the period of construction.

On December 21, 1987, the plaintiff's petition was heard and allowed. The trial court issued a writ of *mandamus* directing the defendant to institute eminent domain proceedings. On appeal, the appellate court reversed, holding that the trial court was without jurisdiction to issue the writ of *mandamus* because there had been no physical taking or damaging of the plaintiff's property. (175 Ill. App. 3d at 827.) Further, the court held that, since there had been no taking, the plaintiff's claim for remedy lay before the Illinois Court of Claims. 175 Ill. App. 3d at 827.

The question for us is whether a State officer under the circumstances here may be compelled through a writ of *mandamus* to institute an action for eminent domain where there was no physical taking of the plaintiff's property.

The plaintiff contends that a property owner has such a right where his property has been damaged, though not taken. He cites a number of decisions in support of that claim, including *People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, and *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289. The reasoning, however, underlying the decisions allowing eminent domain proceedings, as we shall see, no longer exists.

This court in *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, analyzed the reasoning in *First National Bank v. Kingery* in holding eminent domain was appropriate though there was damage only and not a taking of the land. The court said:

"[U]nder the facts of that case, *** petitioner should be held entitled to a *mandamus* writ against the Director [of the Department of Public Works and Buildings] to compel eminent domain proceedings; that as a common law action may not be maintained against the State, *mandamus* against the Director was the *only remedy open to the petitioner,* and to hold that petitioner did not have that remedy would be to render ineffective the provisions of the constitution ***." (Emphasis added.) *People ex rel. Tyson v. Kelly,* 379 Ill. at 301.

In *First National Bank v. Kingery,* upon the plaintiff's petition for eminent domain proceedings, a writ of *mandamus* was issued against the Director of Public Works and Buildings for damage to the plaintiff's land. (*People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289, 292.) In that case, the land was not taken, but the defendant caused roads adjacent to the plaintiff's property to be redirected so as to interfere with direct access to the plaintiff's property. In affirming the issuance of the writ of *mandamus* in that case, this court, as it did in *People ex rel. Tyson v. Kelly,* pointed out that action could not be taken against the State, and that *mandamus* provided the only remedy available to the property owner. *First National Bank v. Kingery,* 369 Ill. at 292.

Too, the appellate court here, citing *People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, and *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, explained that, as in *First National Bank v. Kingery,* issuance of the writ of *mandamus* was approved because it provided the only remedy available. A remedy is now available,

however, through the Court of Claims for property owners whose property has been damaged though not taken for public use.

While under the 1970 Constitution of Illinois, sovereign immunity was abolished (Ill. Const. 1970, art. XIII, §4), the General Assembly, as authorized in the constitution, has restored immunity to the State (Ill. Rev. Stat. 1987, ch. 127, par. 801; see *In re Special Education of Walker* (1989), 131 Ill. 2d 300, 303). Under the Court of Claims Act, however, the Court of Claims is given exclusive jurisdiction to hear and determine "(a) [a]ll claims against the State founded upon any law of the State of Illinois, *** [and] (d) [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." (Ill. Rev. Stat. 1987, ch. 37, par. 439.8.) The Court of Claims Act and the damages provisions within the Act have been held constitutional. *S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397; *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109.

Here, unlike at the times of *People ex rel. Haynes v. Rosenstone, People ex rel. O'Meara v. Smith,* and *First National Bank v. Kingery,* the Court of Claims Act provides a remedy for the property owner whose property is damaged but not taken. Making the plaintiff's exclusive remedy lie in the Court of Claims is fully appropriate, for this court has held that, where some other adequate remedy is available, *mandamus* will not lie. *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 250; *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 301.

The plaintiff argues next that, in the event that *First National Bank v. Kingery* and the similar holdings are not followed, this court should carry out article I, section 15, of our constitution, which provides:

"Private property shall not be taken or damaged for public use without just compensation as provided by law.

Such compensation shall be determined by a jury as provided by law." (Ill. Const. 1970, art. I, §15.)

The plaintiff contends that under this provision he has the right to be compensated through eminent domain proceedings for damage to his property and that he has the right to have a jury determine the damages.

We cannot accept the plaintiff's contention that compensation for property that has been damaged, as well as for property that has been physically taken, should be determined through eminent domain proceedings, nor the claim that compensation shall be determined by a jury. Under eminent domain, distinction is to be drawn between property that has been physically taken and property that has been damaged. In order to constitute a "taking" compensable through eminent domain proceedings, there must be a physical taking of the property. (*Horn v. City of Chicago* (1949), 403 Ill. 549, 554; *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 251; *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 303; *Rigney v. City of Chicago* (1881), 102 Ill. 64, 72; *Lake Ka-Ho, Inc. v. Kramer* (1985), 131 Ill. App. 3d 782, 786.) Where no part of the land is taken, the property owner cannot, by *mandamus*, compel the institution of proceedings under eminent domain, but may find a remedy in the Court of Claims. *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 270-71; see *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342, 349 (loss of access is not a taking but a damaging); *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 250-51; *Rigney v. City of Chicago* (1881), 102 Ill. 64, 71-72; *Rothschild v. Baise* (1987), 157 Ill. App. 3d 481, 483.

The plaintiff has not alleged that an actual, physical taking has occurred. During oral argument, the plaintiff acknowledged there was none. The plaintiff's claims that his property has been damaged by the State's construction machinery being parked on his property and by

other interferences with access to his property do not entitle him to eminent domain proceedings to compensate him. As we have stated, a taking of the property is required. Illustrating, in *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 268, the plaintiff alleged a loss of access to his property as a result of construction performed by the city and the State. This court held that, although there was "no question that a property owner suffers compensable damages if his access to an abutting street is taken or materially impaired \* \* \*, a loss or impairment of access does not involve an actual physical invasion of the property, and it therefore constitutes a 'damaging' rather than a 'taking.' " (*Granite City Moose Lodge*, 96 Ill. 2d at 271.) Further, the court stated that an abutting property owner is not entitled to have condemnation proceedings instituted where no part of his property is physically taken and that the involved public authority is not required, under the constitution or under the Eminent Domain Act, to institute condemnation proceedings. *Granite City Moose Lodge*, 96 Ill. 2d at 271.

Too, in *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 250, this court held that an abutting property owner, no part of whose property was taken by public improvement, was not entitled to have condemnation proceedings instituted to determine *consequential* or resulting damages to his property.

The plaintiff's protest that referring his complaint of damages to the Court of Claims, where no provision is made for juries, will deprive him of his right to a jury hearing is not convincing. The plaintiff does not have a right to a jury under the circumstances here. To repeat, article I, section 15, of the constitution provides:

> "Private property shall not be taken or damaged for public use without just compensation *as provided by law.* Such compensation shall be determined by a jury *as pro-*

*vided by law."* (Emphasis added.) (Ill. Const. 1970, art. I, §15.)

As has been already stated, article XIII, section 4, states that, "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) The General Assembly, pursuant to this constitutional authority, has restored sovereign immunity through the enactment of the sovereign immunity provision (Ill. Rev. Stat. 1987, ch. 127, par. 801) and provided that, under the Court of Claims Act, the Court of Claims has exclusive jurisdiction of claims against the State of Illinois. (Ill. Rev. Stat. 1987, ch. 37, par. 439.1 *et seq.*) If there is complaint that this deprives the plaintiff of the right to a jury trial, we would refer to this court's observation in *S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 407: "If the inequities inherent in the doctrine of sovereign immunity are to be remedied, it is for the legislature and not this court to act."

The plaintiff also argues that his suit is against Gregory W. Baise, an individual, rather than against the State and thus his claim is properly within the jurisdiction of the circuit court. In support, the plaintiff cites this court's decision in *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, and the appellate court holding in *Inn of the Lamplighter, Inc. v. Kramer* (1984), 128 Ill. App. 3d 317. The plaintiff's reliance on this authority is misplaced. The court in *Herget National Bank v. Kenney* made it clear that a suit like this one is against the State. The court said that when the State will be directly and adversely affected by the judgment, making the State the real party against whom relief is sought, the suit is against the State. (*Herget National Bank v. Kenney*, 105 Ill. 2d at 408-09.) That is the case here.

In *Herget National Bank v. Kenney*, this court held that the writ of *mandamus* ordering the Director of Conservation to institute eminent domain proceedings

was properly issued. The reason: "[T]here ha[d] been a physical invasion and taking of the property in question." (*Herget National Bank v. Kenney*, 105 Ill. 2d at 410.) The State official had a duty to institute eminent domain proceedings because the State had taken the plaintiff's property. Here, the plaintiff admits that there has been no taking.

In *Inn of the Lamplighter, Inc. v. Kramer* (1984), 128 Ill. App. 3d 317, the appellate court, basing its decision on *First National Bank v. Kingery*, 369 Ill. 289, *People ex rel. O'Meara v. Smith*, 374 Ill. 286, and *People ex rel. Haynes v. Rosenstone*, 16 Ill. 513, held that a writ of *mandamus* ordering the State official to institute eminent domain proceedings was proper. Earlier in this opinion, we noted this court's explanation in *People ex rel. Tyson v. Kelly* that the rationale of those decisions was the unavailability of any other remedy, a condition which later did not exist, as claims for damage only to property could be filed in the Court of Claims. *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 301.

For the reasons given, the appellate court's judgment is affirmed.

*Judgment affirmed.*