In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3421

JOSEPH SORRENTINO and LABRON C.
NEAL, on their own behalf and on behalf
of all similarly situated people,

*Plaintiffs-Appellants*,

*v.*

SALVADOR A. GODINEZ, Director of the
Illinois Department of Corrections,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 6757 — **Thomas M. Durkin**, *Judge*.

ARGUED SEPTEMBER 10, 2014 — DECIDED JANUARY 23, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and TINDER,
*Circuit Judges*.

WOOD, *Chief Judge*.   Joseph Sorrentino and Labron C.
Neal are inmates at Illinois's Stateville Correctional Center.
They purchased several items from Stateville's commissary,
but the prison later forbade inmates to possess those items in

their cells. Sorrentino and Neal were among those whose property was removed, as the new rule required. They responded by filing a proposed class action in the district court, alleging that the confiscation of their property was an unconstitutional taking and a breach of contract. We conclude that the district court was correct to dismiss the action, though the dismissal should have been without prejudice.

**I**

The district court concluded that Sorrentino and Neal failed to state a claim upon which relief can be granted and thus that dismissal with prejudice was appropriate. See FED. R. CIV. P. 12(b)(6). It took no action on class certification. Our fresh assessment of the case relies on the facts that they set forth in their complaint, including all reasonable inferences in their favor. See *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Our review is *de novo*. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665 (7th Cir. 2013).

Our two plaintiffs purchased goods from Stateville's commissary throughout 2011 and 2012. Around May 25, 2011, Neal purchased a fan and signed a "personal property contract," which obligated him to follow all Department of Corrections (DOC) rules related to use, ownership, and possession of the fan. Sorrentino purchased a typewriter on November 29, 2011, and a fan on March 27, 2012. He also signed a personal property contract for his fan.

At the time Neal and Sorrentino made their purchases, Stateville allowed inmates to keep typewriters and multiple fans in their cells. It changed the fan policy in July 2012, and memorialized that action in a bulletin that Warden Marcus Hardy issued on July 17, 2012. The bulletin announced that

henceforth inmates were prohibited from possessing more than one fan in their cells. On July 23, 2012, Hardy issued a similar bulletin altogether prohibiting typewriters in cells. The new policy offered several options for inmates who owned the newly prohibited types of property. Inmates with typewriters could have them destroyed; give them to visitors; ship them to someone outside the prison at no cost; store them in "offender personal property," which is returned to inmates upon release from prison; or donate them to the prison library. Extra fans were simply placed in storage as "offender personal property."

Prison officials removed both plaintiffs' fans on July 16, 2012, and Sorrentino's typewriter sometime after July 23, 2012. The fans are currently in storage, and Sorrentino's typewriter is in the prison library. Although the complaint and briefs did not clearly indicate that Sorrentino voluntarily gave the typewriter to the library, at oral argument counsel stated that he opted to donate it (given his restricted range of choice).

Some time later, Sorrentino and Neal filed this suit, on behalf of themselves and an alleged class. (Unless the context requires otherwise, we will refer only to Sorrentino in the remainder of this opinion, for the sake of simplicity. The district court took no action on the class allegations and they are not mentioned on appeal; we thus do not discuss that aspect of the case.) The complaint alleged violations of the Takings and Contracts Clauses of the Constitution as well as a breach of contract; plaintiffs sought monetary, declaratory, and injunctive relief. After Director Godinez filed a motion to dismiss, Sorrentino withdrew the claim for breach of contract to the extent it sought damages. The district court then

dismissed the entire action, finding that the Eleventh Amendment barred claims for money damages against Godinez and that the complaint failed to state a Takings Clause, Contracts Clause, or breach of contract claim. At this point, Sorrentino has abandoned the Contracts Clause claim and all claims for damages. We are thus left with the individual claims for injunctive and declaratory relief for the alleged takings and breaches of contract. The plaintiffs are pursuing those claims only against Godinez, and only in his official capacity (apparently on the theory that the Director of the Department of Corrections is the person with the authority to change the policy).

## II

### A

We consider first the claim that Stateville's revised policy effected a "taking" of Sorrentino's property. The Takings Clause of the Fifth Amendment (applicable to the states through the Fourteenth Amendment) states: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. This provision "does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Nor does the clause require a state to pay compensation prior to or at the same time as a taking. *Id.* Therefore, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195.

The latter rule is what dooms Sorrentino's claims. Illinois provides such a procedure, but he has not tried to use it. Even when no Illinois constitutional provision or statute provides a remedy for a particular taking, "the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance." *Roe v. Cook Cnty.*, 193 N.E. 472, 473 (Ill. 1934). Illinois courts distinguish between a true taking, which requires a physical taking of property for public use, and an action that damages property in some way, such as through restrictions on access. See *Patzner v. Baise*, 552 N.E.2d 714, 717 (Ill. 1990); *Granite City Moose Lodge No. 272 v. Kramer*, 449 N.E.2d 852, 855 (Ill. 1983). Illinois circuit courts have authority to hear true takings claims, which if proven, result in a writ of mandamus ordering the government to institute eminent domain proceedings. See *Patzner*, 552 N.E.2d at 717. The Illinois Court of Claims has exclusive jurisdiction over suits asserting damages to property. See *id.*

The distinction between a taking and a "damaging" (as the Illinois courts dub it) is sometimes unclear. See John Martinez, *A Proposal for Establishing Specialized Federal and State "Takings Courts,"* 61 ME. L. REV. 467, 482 (2009) (discussing the Illinois Court of Claims and noting "the indistinct line between the jurisdiction of a state's court of claims and circuit court in takings cases"). Sorrentino describes Godinez's actions as a "damaging." This characterization seems sensible: the DOC bulletins limited his access to and enjoyment of his fan and typewriter but did not completely extinguish his rights in his property. The broader point, however, is that *some* Illinois forum is available; nothing in federal law requires the state to send these cases to one tri-

bunal versus another. If the confiscation of Sorrentino's property is a true taking, he may pursue his claim in the appropriate Illinois circuit court. If it is a damaging, state law directs him to the Illinois Court of Claims. Neither Sorrentino nor Neal has explored either of these avenues under Illinois law and given the state a chance to provide compensation. The takings claims are thus not ripe. See *Williamson*, 473 U.S. at 194–95.

Sorrentino tries to avoid this outcome with a futility argument: the Illinois procedures are functionally nonexistent, he charges, because the Court of Claims lacks the power to grant the equitable relief he wants. A plaintiff need not avail himself of state procedures if those procedures are futile, meaning inadequate or unavailable. See *Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 456 (7th Cir. 2002). Sorrentino urges us to find futility here and to allow him to present his claim in federal court without turning first to the state courts. But his argument does not hold together. Even if he is correct that the Court of Claims is the proper court and that it cannot grant equitable relief, see *Garimella v. Bd. of Trustees of Univ. of Ill.*, 50 Ill. Ct. Cl. 350, 353 (1996) (concluding that the Court of Claims cannot grant equitable relief but citing Illinois cases that imply the opposite), that limitation does not automatically mean that he may seek an injunction in a different court. He and Neal complain of a taking, and the normal remedy for a taking is monetary relief, which the Illinois Court of Claims can provide. See *Peters v. Vill. of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007) (noting the "strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action").

The question thus becomes whether Sorrentino has presented the kind of case in which equitable relief may be available for a takings claim. We have identified only two such situations: "when the government has taken property for a private, rather than a public, use" and when a "facial challenge[] to legislative action authorizing a taking" is possible. *Id.* Neither exception is applicable here. Whatever "taking" occurred with respect to the typewriter and fans at issue here was not for private use. Furthermore, Sorrentino has not mounted a facial challenge of the kind we contemplated in *Peters*. There, we relied on *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323 (2005) and *Yee v. City of Escondido*, 503 U.S. 519 (1992). In those cases, the plaintiffs alleged that the relevant regulation did not substantially advance a legitimate state interest regardless of how it was applied. See *San Remo Hotel, L.P.*, 545 U.S. at 345; *Yee*, 503 U.S. at 534. Sorrentino has not made such an argument against the Stateville bulletins, and it is hard to see how he could, given the important state interest of safety in prisons. He and Neal thus are not exempt from *Williamson*'s ripeness requirement just because Illinois may require them to file their claim in a court that cannot grant equitable relief.

Because the plaintiffs filed their takings claim in federal court before seeking compensation in an Illinois tribunal, we affirm the district court's dismissal of the claim. The dismissal, however, should have been without prejudice, so that they may avail themselves of whatever procedures may still be available under Illinois law.

B

Sorrentino also asserts that Director Godinez breached an implied-in-fact contract formed at the time of each purchase from the Stateville commissary. (He no longer relies on the "personal property contracts" that he signed as the basis of his breach of contract claim, as he did earlier in this suit.) He argues that the terms of these alleged contracts prohibited the state from altering the policies regarding the possession of fans and typewriters in inmate cells in force at the time.

We need not wade into the merits of this state-law claim. It appears not to be one that could be heard in a state court of general jurisdiction, because the State Lawsuit Immunity Act grants immunity to the state from suit "in any court" and provides for specifically defined exceptions to that immunity. See 745 ILL. COMP. STAT. ANN. 5/1. Nevertheless, the state Court of Claims remains available for "[a]ll claims against the State founded upon any contract entered into with the State of Illinois." 705 ILL. COMP. STAT. ANN. 505/8(b). A person with a claim against Illinois based on a contract with the state must bring suit in the Illinois Court of Claims, rather than in the relevant Illinois circuit court or federal district court. See *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (finding that 745 ILCS 5/1's stipulation that tort actions against Illinois must be brought in the Court of Claims means that Illinois is immune from such claims in federal court). We note for the sake of completeness that such a claim may not be heard in federal court, regardless of the state's limitations on its own tribunals, because federal courts may not entertain suits against states based on state

law. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Sorrentino and Neal sued Director Godinez rather than Illinois, but this distinction is irrelevant. Sovereign immunity normally does not bar suits for injunctive relief in federal court alleging that a state official violated the federal constitution or laws. See *Ex Parte Young*, 209 U.S. 123 (1908). But the plaintiffs are not asserting such a claim. Sorrentino claims only that the Director (acting for the state) breached a contract. The State Lawsuit Immunity Act forbids state-law suits outside of the Court of Claims that allege that the official merely "exceeded his authority by breaching a contract." *Smith v. Jones*, 497 N.E.2d 738, 740–41 (Ill. 1986). Sovereign immunity and *Pennhurst* thus bar this claim in federal court, and the district court was correct to dismiss it. Once again, however, the dismissal should have been without prejudice. See *Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006).

## III

We AFFIRM the district court's dismissal of Sorrentino and Neal's Takings Clause and breach of contract claims. The judgment is modified, however, to be one without prejudice. While they may not refile this action in federal court, Sorrentino and Neal may seek to pursue their claims in the appropriate Illinois forum.