(No. 35618.—

HELEN GOODALL RYAN *et al.*, Appellees, *vs.* EDWIN A. ROSENSTONE, Director of Public Works and Buildings, Appellant.

*Opinion filed September 30, 1960.*

GRENVILLE BEARDSLEY, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and THEODORE G. MAHERAS, Assistant Attorneys General, of counsel,) for appellant.

MILLER, THOMAS, HICKEY & COLLINS, of Rockford, (EDWIN T. POWERS, JR., of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The defendant, as Director of Public Works and Buildings of the State of Illinois, appeals from a decree of the circuit court of Winnebago County ordering the issuance of a mandatory injunction to compel him to remove a thirty-foot section of the insurmountable median on Illinois highway No. 2 in front of the driveway of plaintiffs' place of business.

Illinois highway No. 2 is a heavily travelled four-lane highway between the metropolitan areas of Rockford, Illinois, and Beloit, Wisconsin, and accommodates much of the north-south traffic between those areas. The Department is engaged in a program of modernizing this portion of the highway into a four-lane, modified access controlled highway. About 1200 feet south of the Illinois-Wisconsin State line there is a three-way intersection where Gardner Street, a four-lane access highway connecting Illinois high-

way No. 2 and the Illinois Northwest Tollway, meets highway No. 2 on its east side. There is a surmountable median dividing the north and south lanes of the highway from the State line south about 600 feet. At this point the southbound pavement widens gradually until it reaches a width of four traffic lanes. The inside lane, which is about 620 feet long, is used by vehicles turning left on to Gardner Street, and is called a left-turn storage lane. The center two lanes are for through southbound traffic. The outside lane is for parking. An insurmountable median, six inches high, has been constructed along the left side of the left-turn storage lane, thus preventing entry to the southbound lanes from the east or northbound traffic by means of a left or U turn.

Helen Goodall Ryan owns a 3½-acre tract of land in South Beloit, Illinois, upon which the Goodall Oil Company has its principal place of business. Such tract lies on the east side of the highway north of Gardner Street and the entire west line of the property abuts on that portion of the highway that is divided by the insurmountable median.

The oil company distributes, transports and sells oil, gasoline and refined oil products at wholesale and retail from its bulk plant located on the premises. It operates a fleet of seven trucks in distributing its products within the State of Illinois. Trucks leaving the bulk plant to go south on Illinois highway No. 2 travel north across the State line some four to five hundred feet before they execute a turn to travel south into Illinois. The president of the corporation testified that the company has been advised by the city police of Beloit, Wisconsin, and the Wisconsin Secretary of State's police that it is unlawful to operate their trucks in Wisconsin.

The trial court found that the insurmountable median deprives the plaintiffs of proper egress from their property and forces the company to act in such a manner that it is subject to possible prosecution in the State of Wisconsin.

It also found that in order to afford the plaintiffs a proper access to the southbound lanes of traffic it would be necessary that a 30-foot section of the insurmountable median be removed from in front of their driveway. A decree ordering the issuance of a mandatory injunction to remove the 30-foot section of the median was then entered.

A property owner whose land abuts upon a public street or highway has, as an incident to his ownership, the right of access. (Ill. Rev. Stat. 1957, chap. 121, par. 4—210; *Illinois Malleable Iron Co.* v. *Comrs. of Lincoln Park,* 263 Ill. 446.) This right is subject, nevertheless, to the right of the State to regulate and control the public highways for the benefit of the public even though the abutter may be inconvenienced. (*Illinois Malleable Iron Co.* v. *Comrs. of Lincoln Park,* 263 Ill. 446; *Chicago National Bank* v. *City of Chicago Heights,* 14 Ill.2d 135; *Calumet Federal Savings & Loan Ass'n* v. *City of Chicago,* 306 Ill. App. 524; *Jones Beach Boulevard Estate* v. *Moses,* 268 N.Y. 362; 100 A.L.R. 491.) The regulation or restriction must, however, be reasonable. *Chicago National Bank* v. *City of Chicago Heights,* 14 Ill.2d 135.

The increasing number of accidents and vehicles on our highways cogently indicates the necessity of having a highway system which affords safety and permits the free flow of traffic. Such a system requires traffic control devices such as limited access highways, one-way streets, express thoroughfares, medial dividers, barrier curbs and the like. These and other traffic control devices may, on occasion, place a restriction on an abutting property owner's free and convenient access to his property, but as long as the restriction is reasonable the courts will not interfere.

No final or absolute rule can be laid down to determine reasonableness, but the circumstances of each situation must be weighed in the light of the purpose sought to be accomplished. We feel, however, that the administrative decision by the Department as to the need for certain traffic

control devices is entitled to respect by the courts because of its intimate knowledge of traffic problems.

The question then is whether the restriction on plaintiffs' access to the southbound lanes of traffic was reasonable in the light of the purpose to be accomplished by the restriction. Plaintiffs argue that the action of the Director in placing the insurmountable median in front of their premises and not in front of numerous commercial enterprises to the north of them was arbitrary and capricious.

The engineers for the Division of Highways determine the design of a highway including the type of median strips to be used. Their determination is based upon the movement and volume of traffic that is present at various locations along the highway. The present traffic count, together with a projection of this count for the probable traffic volume in twenty years, is considered in designing such a highway.

Engineering studies were made of the intersection of highway No. 2 and Gardner Street prior to designing the intersection and the approaches thereto. A count of the traffic at the intersection revealed that approximately 16,000 vehicles per day moved over it on the northbound and southbound lanes. Thirty per cent of this number, or about 5,000, made a turning movement at the intersection. Because of the high number of vehicles turning left on to Gardner Street, it was determined that a separate turning lane is required. The determination that the left-hand storage lane should extend in length a distance of 620 feet was also based on the number of vehicles turning at this intersection. Thus, a 620-foot left-hand storage lane was constructed on Illinois highway No. 2 immediately north of Gardner Street, and vehicles that stop or slow down in the left-hand storage lane are protected by the insurmountable median.

From the north end of the left-hand storage lane to the State line the highway consists of four lanes and is divided by a surmountable rattler type median. This type of median

does not prohibit turns into the on-coming lanes of traffic. Its purpose is to rattle a vehicle when it crosses so that the driver is made aware that he is about to enter the on-coming lanes of traffic. It is used where there is no great danger of making a turn into the lanes of on-coming traffic but where there is a need to keep nonattentive drivers alert.

The plaintiffs' property abuts upon that portion of the highway where the insurmountable median is constructed so that access to the southbound lanes is restricted. The commercial enterprises on the same side of the highway and to the north of plaintiffs' property do have free access to the southbound lanes because the highway at that location is divided by the surmountable median. The traffic problems in the two areas, however, are materially different. The traffic in front of the commercial enterprises to the north of plaintiffs' property is moving steadily in a straight line, while that in front of the plaintiffs' property is slowing down or stopping preparatory to make a left turn on to Gardner Street from the storage lane. The construction of the insurmountable median was based on an engineering study of the busy three-way intersection which showed the need for a left-hand storage lane and an insurmountable median to protect vehicles in that lane and not on the arbitrary and capricious whim of the Director.

The plaintiffs also argue that the Director by the construction of this median in front of their property is compelling the oil company to violate the penal ordinances of the city of Beloit, Wisconsin, and the penal statutes of the State of Wisconsin. The evidence introduced to prove this contention is unsatisfactory.

The president of the oil company testified that the Wisconsin police said the company's trucks could not lawfully operate in Wisconsin, but he did not state what law, if any, would be violated. It would seem that he believed Wisconsin licenses were necessary before the trucks could enter Wisconsin, but the reciprocity agreement between the

States of Illinois and Wisconsin concerning motor vehicle fees appears to exempt the company from paying any additional fee. Nevertheless, when defendant mentioned the matter of license fees in his brief, the plaintiffs in their reply brief admit "There isn't one scintilla of evidence within the Record of this case to indicate even in the barest sense that the State of Wisconsin is attempting to exact fees from the plaintiff." The evidence fails to show that the oil company's trucks are violating any penal statute.

The oil company's trucks travel some 1,000 to 1,100 feet north before they drive south to their destination in Illinois. The fact that they must cross the State line is of no more moment in this case than if they had to cross a county or township line. We are of the opinion that the restriction on left and U turns in front of plaintiffs' property is reasonable under the existing circumstances.

The necessity of using traffic control devices is increasing daily and they are being installed at a rapid rate over the entire State. Undoubtedly this will inconvenience some abutting owners. When, however, an engineering study or actual experience dictates that a device is required for public safety, the Department's determination should not be arbitrarily upset. The Department, on the other hand, should do everything possible to alleviate personal hardships caused by the use of such devices, commensurate with the public safety and welfare.

We are of the opinion that the plaintiffs have failed to show that the restriction on their access to the southbound lanes of Illinois highway No. 2 is unreasonable. The decree of the circuit court of Winnebago County is therefore reversed.

*Decree reversed.*