THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellee, *v.* JOHN GREENWELL *et al.*, Defendants-Appellants.

Fifth District   No. 75-507

Opinion filed January 3, 1977.—Rehearing denied February 8, 1977.

W. C. Spomer, of Cairo, for appellants.

William J. Scott, Attorney General, of Springfield (Byron L. Connell, Jr., Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

The Department of Public Works and Buildings of the State of Illinois filed on September 17, 1971, a petition for condemnation of several tracts of land owned by defendants. On June 5, 1974, defendant Sullivan, the owner of the .885-acre tract that is the subject of this appeal, cross-petitioned for damages to land not taken. Jury verdicts were returned in the amounts of $2,500 for the land taken, .618 acre of defendant's parcel, and $6,000 as damages to the remaining land, .267 acre improved with a house. Defendant's post-trial motion was denied. The sole issue

defendant presents for review is whether the trial court erred in striking the testimony of a codefendant's valuation witness pertaining to the amount of damages to the land not taken. No question is raised on appeal regarding compensation for the land taken.

The land in question is situated as follows:

In condemning the land the State also prohibited access to new Route 3. Defendant's frontage and access to existing Route 3 remains, but because of other condemnation proceedings for the construction of new Route 3, existing Route 3 now terminates about one-quarter mile east of defendant's remaining property. This has turned existing Route 3 into a cul-de-sac east of defendant's remaining property. Defendant can get to new Route 3 by traveling 800 feet west of her property on existing Route 3 and taking a connecting road a short distance to the new highway.

Five valuation witnesses, three for defendants and two for the State, gave opinions of the amounts of damages to defendant's land not taken. Donald Turner, the first of defendant's witnesses to testify, opined that the highest and best use for defendant's land at the time of the filing of the condemnation petition was commercial and that the diminution in value, as a result of the taking of the land not taken was $14,000. He initially stated that he based this figure on his observation that because of the

decreased size of the parcel, it would be practically useless for commercial purposes.

On cross-examination, Turner, the sheriff of the county, stated that he had never purchased or sold commercial real estate and was not a licensed real estate broker or appraiser. Turner explained that his valuation figures were based on his lifelong familiarity with the property. He owned property about one-quarter mile west of defendant's property. The witness noted that railroad tracks ran just east of the property, rendering it, in his opinion, suitable for commercial purposes. Later he admitted that the tracks were 15 to 20 feet above the level of the lot. Next, the witness stated that in September of 1971 the lot was used only for residential purposes. He also admitted that in the 10 years prior to 1971, no commercial development had occurred in the vicinity of the property in question and within the 20-year period prior to 1971, only one service station had opened. However, it had also closed within this period. The witness placed a commercial value of $47,000 an acre on the land, but knew of no other land that had sold for that price. Nor did he know of any comparable sale for the $24,000 an acre price he had placed on the land taken; nor for $15,000, $10,000 or $5,000 an acre. When asked on cross-examination what factors he took into consideration in arriving at his determination of the damages to the land not taken, he testified that he considered the closing of existing Route 3 immediately to the east of the property a significant element. He also maintained that the consequent decrease in traffic flow in front of the property would adversely affect its commercial value.

After argument outside the presence of the jury, the court instructed the jury that the testimony of witness Turner could be considered concerning the value of the total tract and the value of the land taken. But the court struck from the record the testimony of the witness regarding damages to the land not taken and admonished the jury to disregard any testimony of the witness on this issue.

Defendant's witness Ruben Denver, a local real estate broker, testified that the value of the land not taken was $26,000 before the taking, and $14,000 afterwards, the damages to the remainder thus amounting to $12,000. On cross-examination he valued the whole property at $46,000 an acre, yet did not know of any land, of a similar kind or nature, that had sold for $30,000, $20,000, or even $10,000 an acre for commercial purposes in the county.

Defendant's final witness, another real estate broker, stated that the damage to the remainder was $11,900. Cross-examination of him yielded information similar to that elicited from defendant's other two witnesses.

Petitioner's two expert witnesses, both professional real estate appraisers, testified that the damage to the land not taken was $4,900 and

$5,460, respectively. Both stated that the highest and best use of the land was residential, because of the size of the remaining parcel and the improvement thereon. One appraiser pointed out that defendant's property did not touch the Illinois Central Railroad right of way because of an intervening 25-foot strip owned by another landowner. As to the factors which both appraisers considered in arriving at their evaluation, both noted the irregular shape of the land not taken, the closeness to two right-of-ways, and the necessity of replacing the lateral field septic system with a septic tank.

Defendant contends that the trial court erred in instructing the jury to disregard Sheriff Turner's testimony regarding his valuation of the damage to the land not taken and in striking the portion of his testimony pertaining to this issue. We disagree.

■■ It is well settled that although any qualified individual may state his opinion regarding the value of property, some preliminary showing of the factors upon which the opinion is based must exist, and where improper elements of damage have been considered, the testimony is incompetent and upon motion must be stricken. (*City of Chicago v. Giedraitis,* 14 Ill. 2d 45, 150 N.E.2d 577 (1958); *City of Chicago v. Central National Bank,* 5 Ill. 2d 164, 125 N.E.2d 94 (1955).) This rule applies where the valuation opinion in a condemnation proceeding is based in part upon proper and in part upon improper elements of damages. The record shows that witness Turner took into consideration two improper elements in evaluating the damage to the land not taken: (1) that existing Route 3 would not be a through highway, but instead would become a dead end just east of defendant's property; and (2) that there would be a decrease in traffic past defendant's property.

■■ The first element considered by Turner was improper because there was no showing that defendant had suffered any special damages as a result of the closing of the viaduct one-quarter mile east of her property that were different from that suffered by the public at large or by the other property owners in the area. (*Guttery v. Glenn,* 201 Ill. 275, 66 N.E. 305 (1903); *City of East St. Louis v. O'Flynn,* 119 Ill. 200, 10 N.E. 395 (1887); see *Department of Public Works & Buildings v. Wilson & Co.,* 62 Ill. 2d 131, 340 N.E.2d 12 (1975).) This is not a case in which access rights were taken as a result of the closing of a street that terminated directly in front of a defendant's property, thus leaving the property on a "blindcourt." As such, *City of Chicago v. Burcky,* 158 Ill. 103, 42 N.E. 178 (1895), and *Village of Winnetka v. Clifford,* 201 Ill. 475, 66 N.E. 384 (1903), are distinguishable. Circuity of travel is not compensable. (*Calumet Federal Savings & Loan Association v. City of Chicago,* 306 Ill. App. 524, 29 N.E. 292 (1940).) Defendant still has the same amount of frontage on existing Route 3 as she previously had. Because she has

suffered no loss of direct access to existing Route 3, she can claim no damages as a result of the dead-ending of Route 3 one-quarter mile east of her property and the circuity of travel necessitated thereby. Nor can she claim loss of access to new Route 3, since she never had any access to this road. *Rigney v. City of Chicago,* 102 Ill. 64 (1881).

■■ ■ Similarly, the second element considered by Turner was improper for the reason that defendant has no property right in the continuing flow of traffic along the road, existing Route 3, that abuts her land. (*Department of Public Works & Buildings v. Mabee,* 22 Ill. 2d 202, 174 N.E.2d 801 (1961); *Ryan v. Rosenstone,* 20 Ill. 2d 79, 169 N.E.2d 360 (1960).) This is not to say that the dead-ending of existing Route 3 would not affect traffic flow past defendant's property. It obviously would, and in *Department of Public Works & Buildings v. First National Bank,* 9 Ill. App. 3d 633, 292 N.E.2d 487 (1973), the court recognized that this effect was relevant to the question of the highest and best use of the land not taken. But in that case the court pointed out that the evaluation witness specifically stated that he did not consider the loss of traffic flow as an element of damages to the land not taken. We thus imply from this distinction drawn by the *First National Bank* court that it would have considered opinion testimony regarding diminished traffic flow incompetent on the question of damages to land not taken. Accordingly, we find the trial court in the instant case did not err in striking the testimony of witness Turner regarding his valuation of the amount of damages to the land not taken and in instructing the jury to disregard the testimony in question in reaching a verdict on the damages issue.

Our review of the evidence convinces us that the jury's award of $6,000 as damages to defendant's land not taken was not against the manifest weight of the evidence. For the foregoing reasons, we affirm the judgment of the circuit court of Alexander County.

Affirmed.

EBERSPACHER and KARNS, JJ., concur.