INN OF THE LAMPLIGHTER, INC., *et al.*, Plaintiffs-Appellants, v. JOHN D. KRAMER *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0254

Opinion filed October 31, 1984.

Barber, Hall, Segatto & Hoffee, of Springfield (Henry R. Barber and Carl O. Hoffee, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roy E. Frazier, Assistant Attorney General, and William F. Costigan and Robert W. Neirynck, Special Assistant Attorneys General, of counsel), for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs James R. Grady and Ruth H. Grady, as assignees of the original plaintiff, Inn of the Lamplighter, Inc., appeal from an order of the circuit court of Sangamon County striking their complaint for the issuance of a writ of *mandamus* against the defendants. The writ was sought to compel the defendants to bring an action in eminent domain to compensate the plaintiffs for their alleged loss of access to their property. This has sometimes been referred to as "inverse condemnation."

Plaintiffs owned approximately 8.7 acres of land south of Springfield on what was U.S. Route 66 and afterwards Interstate Route 55. A resort motel complex was operated on the premises.

In 1948 and 1951, when Route 66 was being constructed in the area, plaintiffs' predecessors in title dedicated two portions of land for that purpose. The 1948 document provides:

"Reasonable outlet from the grantor's abutting property will be permitted, but only via a service drive to be constructed on the outside portion of the adjacent highway right of way. The service drive will not connect with the main highway traffic lanes except at the South line of the said NW¼, Sec. 34, and at a point 7980+ ft. N. thereof."

The 1951 dedication contains similar language as follows:

"Reasonable outlet from the grantor's abutting property will be permitted, but only via a service drive to be constructed on the outside portion of the adjacent highway right of way. The service drive will not connect with the main highway traffic lanes except at the North line of the said Northeast Quarter, Southwest Quarter, Section 34 (Station 245 + 05 + )."

The right of access reserved in these dedications was located at the intersection of U.S. 66 and what is commonly known as Hoechester Road. It thus appears that one wishing to get to the motel would turn off U.S. 66 onto Hoechester Road, and thence onto the frontage road to the premises.

In 1970, apparently as part of the upgrading of U.S. 66 to interstate standards, defendants' predecessors in office caused Hoechester Road to be blocked off. Plaintiffs alleged that this caused them to close the motel, at a substantial financial loss. It is admitted that no compensation was paid for the closing of Hoechester Road.

In 1974 plaintiffs filed the instant suit seeking to compel the defendants to institute condemnation proceedings so that compensation could be paid to plaintiffs for their loss of access to their property. The trial court denied defendants' motion to dismiss and they then answered. Later, defendants filed a motion to reconsider based upon a decision of the supreme court in *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 449 N.E.2d 852. The trial court then held that under this authority it was without jurisdiction and dismissed the suit. While it is not specifically articulated in the trial court's order, the inference is that plaintiffs' remedy is for damages in the Illinois Court of Claims. We believe that the trial court has misread the *Granite City* case, and we reverse and remand.

Since it is admitted that no part of plaintiffs' land was taken by the State, the precise question becomes: Under what circumstances may a property owner force the State to bring a condemnation action when his property has been only damaged? The answer lies in a close examination of the interplay among certain constitutional provisions, both under the 1970 and 1870 organic documents, their statutory implementation, and decisions of the supreme court on the subject.

The 1970 Illinois Constitution, like its 1870 predecessor, provides that private property shall not be taken or damaged for public use without just compensation (Ill. Const. 1970, art. I, sec. 15). The same section provides that such compensation shall be determined by a jury. The 1970 Constitution also provides, "Except as the General Assembly may provide by law, sovereign immunity in this State is abol-

ished." (Ill. Const. 1970, art. XIII, sec. 4.) This represents a radical departure from the prior provision: "The State of Illinois shall never be made defendant in any court of law or equity." Ill. Const. 1870, art. IV, sec. 26.

In reaction to the 1970 provision, the General Assembly passed Public Act 77—1776, effective January 1, 1972, providing that except as provided in the Court of Claims Act, the State should not be made a defendant or a party in any court. Ill. Rev. Stat. 1973, ch. 127, par. 801.

The Illinois Court of Claims has existed for many years; its function has been to ameliorate the harsh provisions of sovereign immunity, especially under the 1870 Constitution. Prior to 1945, its jurisdiction, as defined by the General Assembly, was largely confined to actions against the State sounding in contract and tort. In 1945 there was a broadening of its jurisdiction to include "[a]ll claims against the state founded upon any law of the State of Illinois ***." (Ill. Rev. Stat. 1983, ch. 37, par. 439.8(a).) This appears to be an effort to overcome two decisions by the supreme court, *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289, 16 N.E.2d 761, and *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 29 N.E.2d 274.

*Kingery* is the leading case concerning the issue presented in the instant appeal. There the factual situation was the same: The petition sought a writ of *mandamus* against the Director of Public Works and Buildings of the State of Illinois to compel him to file an eminent domain suit for damages to the property of the petitioner. The supreme court indulged in the fiction that the suit was against the Director and not against the State, thereby avoiding the strictures of article IV, section 26, of the 1870 Constitution, and affirmed the award of the writ issued by the trial court. The court stated that otherwise the petitioner would have no remedy.

In 1939 the legislature passed a statute vesting jurisdiction in the Illinois Court of Claims over suits for damages for property damaged, but not taken, by the State. This statute was pleaded as a defense in *O'Meara*, which involved the same situation as *Kingery*. The court, citing *Kingery*, held the statute unconstitutional, saying:

> "Section 13 of article 2 of the Illinois constitution makes absolute the right of a land owner to damages whenever his property is taken or damaged for public use. It makes no difference whether the damages are ascertained before or after the injury is inflicted." *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 288, 29 N.E.2d 274, 275.

The next significant decision of the supreme court came in *People*

*ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, 158 N.E.2d 577. The factual situation was the same. The petitioner sought a writ of *mandamus* against the Director of Public Works and Buildings for damages to land when there had been no taking by the State. The court, citing *Kingery* and a number of other cases which had followed it, held that the writ should issue. Even though the Court of Claims Act had been overhauled in 1945, as detailed above, the supreme court held:

> "And for the reasons stated in the *O'Meara* case, we do not regard the possibility of securing relief in the court of claims, or even the pendency of petitioner's claim in that court, as a bar to the relief here sought." 16 Ill. 2d 513, 516, 158 N.E.2d 577, 579.

The common thread throughout these cases is that the State of Illinois, or one of its agencies, was the only defendant. Cases in which a municipality, or other entity, which is subject to a suit for damages, fall into a different category. This distinction was summed up in *Granite City*, where the court said:

> "Further, in *Rosenstone,* there was no other party involved against whom the property owner could seek a remedy. The significance of this fact is evident from this court's opinion in *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247. There, as in the instant case, the appellants, property owners, sought a writ of *mandamus* against both a city and the State. In denying the writ as to the State, this court reasoned:
>
>> 'Appellants seek the writ of *mandamus* against all of the appellees, saying that there is no other form of proceeding in which they may have relief against the three. Much reliance is placed by them upon the cases of *People ex rel. First Nat. Bank v. Kingery*, 369 Ill. 289, and *People ex rel. Omeara v. Smith*, 374 Ill. 286. The writ was allowed in those cases because a suit for damages could not be maintained against the Director of the Department of Public Works and Buildings and there was no other party against whom damages could be recovered. In the case at bar appellants allege liability against each appellee and say that each of the appellees has money available for the purpose of paying the consequential damages. The reason, therefore, existing in the *Kingery* and the *Smith* cases does not apply here.'
>
> 399 Ill. 247, 250." (*Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 270, 449 N.E.2d 852, 855.)

See also *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 40 N.E.2d

510; *Horn v. City of Chicago* (1949), 403 Ill. 549, 87 N.E.2d 642.

An inspection of the complaint in the instant case reveals that it falls into the first category, *i.e.*, the State only is defendant. It follows that the petition should not have been dismissed. *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289, 16 N.E.2d 761; *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 29 N.E.2d 274.

The trial court in its order placed great reliance on one sentence in the *Granite City* opinion: "We note parenthetically that, even if the State were to be held responsible for the alleged condemnation, it is certainly questionable whether a writ of *mandamus* would be the appropriate remedy." *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 269, 449 N.E.2d 852, 854.

We regard the court's statement as *dictum,* since the question specifically decided was that another entity existed, the city of Granite City, which was amenable in damages. As the supreme court itself said in *Tyson*:

> "As the only question passed upon in the *Grunewald case* was the jurisdiction of this court, the language quoted above was unnecessary to the decision of that case, was therefore *obiter dictum* \*\*\*." *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 302, 40 N.E.2d 510, 513.

■■ The further observation of the *Granite City* court regarding the court of claims was of a general nature and not directed at the question before it. The court also observed (*Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 268, 449 N.E.2d 852, 854) that the constitutional guaranty of just compensation was "codified" in the Eminent Domain Act. It follows that the right derives from the constitution itself and not from a "claim against the state founded upon any law of the State of Illinois" as provided in the Court of Claims Act. Ill. Rev. Stat. 1983, ch. 37, par. 439.8(a).

This is only just and proper. The constitution guarantees a jury trial in such cases. Jury trials are not provided in the court of claims. Furthermore, recovery in the court of claims is limited and subject to legislative appropriation. See Ill. Rev. Stat. 1983, ch. 37, par. 439.24.

■■ In summary, the court of claims offers no remedy in the instant case. *O'Meara* specifically held against it; *Rosenstone*, decided after the 1945 amendments to the Court of Claims Act, held against it; a plain reading of the constitution forfends it.

However, having decided that it was error to dismiss the petition, we do not believe that the inquiry may end at that point. *Rosenstone* is instructive. In that case judgment for the petitioner was entered on the pleadings. The court said:

"But we think that it was error to direct the writ to issue. The motion for judgment presented for determination, upon the face of the pleadings, the legal effect of the uncontroverted factual allegations and the materiality of those that were disputed. The pleadings raised at least one specific factual issue: whether the present culvert is sufficient to drain surface water from the raised highway without causing it to back up onto petitioner's land. Petitioner says it is not; defendant says it is. More generally, the pleadings leave unresolved the question of whether the raising and resurfacing of the highway created a new situation resulting in damage to the petitioner's land. These questions must be resolved in favor of the petitioner before the State officer can be compelled to institute condemnation proceedings, the only purpose of which is to determine the amount to be awarded as damages. To justify issuance of the writ, the *mandamus* proceeding must determine the fact of damage. As the pleadings stand that fact is disputed, and it was therefore error to enter judgment for the petitioner on the pleadings." *People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, 517, 158 N.E.2d 577, 579.

So, in the instant case, the pleadings raise the question of access. The petitioners claim that access has been eliminated; the defendant claims that it has only been altered; that access is still possible through two clover-leaf interchanges which admittedly are .92 miles north of Hoechester Road or 1.23 miles south. It follows under *Rosenstone* that the fact of damage, in this case loss or not of access, must be determined in the *mandamus* proceeding. If no damage has occurred, the writ will not issue; if damage has occurred, the compensation will be determined in the eminent domain proceeding.

The right of access and its accompanying circumstances have received varied treatment in the courts of Illinois. All agree that there is a police power in the State to restrict access, provided that restriction is reasonable. (See, *e.g., Ryan v. Rosenstone* (1960), 20 Ill. 2d 79, 169 N.E.2d 360, and *Department of Public Works & Buildings v. Mabee* (1961), 22 Ill. 2d 202, 174 N.E.2d 801, concerning insurmountable medians in abutting highways.) A case somewhat similar to the instant one is *Department of Public Works & Buildings v. Greenwell* (1977), 45 Ill. App. 3d 159, 359 N.E.2d 780. There the property owner was foreclosed of any access to a new highway and the existing highway was terminated in a cul-de-sac east of the property. However, the owner had access to the new highway by traveling 800 feet west and taking a connecting road for a short distance. The appellate court

said:

> "Circuity of travel is not compensable. [Citation.] Defendant still has the same amount of frontage on existing Route 3 as she previously had. Because she has suffered no loss of direct access to existing Route 3, she can claim no damages as a result of the dead-ending of Route 3 one-quarter mile east of her property and the circuity of travel necessitated thereby." 45 Ill. App. 3d 159, 163-64, 359 N.E.2d 780, 784.

In *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131, 340 N.E.2d 12, there is a valuable compendium of authorities on the subject of access. In that opinion the court stated:

> "There is some divergence among the States as to whether the issue of materiality of impairment of access is a question of law or fact. (See cases collected at 42 A.L.R.3d 13, 71-75 (1972).) In our opinion, the better view is that it is a question of law for the court to determine in the first instance whether there has been an actionable taking or material impairment of access which entitles the property owner to compensation." 62 Ill. 2d 131, 141, 340 N.E.2d 12, 17.

The order of the circuit court of Sangamon County is therefore reversed and the cause is remanded to that court with directions to reinstate the petition. The court shall then proceed to determine upon such evidence and upon such authority as it may see fit whether there has been a material impairment of access. If it so finds, then it shall issue the writ of *mandamus* compelling the defendant to file an eminent domain suit. If it finds that no material impairment has occurred, it shall again dismiss the petition.

Reversed and remanded with directions.

MILLS, P.J., and GREEN, J., concur.