In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-2464 & 09-1381

PATRICIA A. MUSCARELLO,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

OGLE COUNTY BOARD OF COMMISSIONERS, *et al.,*

*Defendants-Appellees,*

and

BAILEYVILLE WIND FARMS, LLC, *et al.,*

*Defendants-Appellees, Cross-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 C 50017—**Frederick J. Kapala**, *Judge.*

ARGUED OCTOBER 6, 2009—DECIDED JUNE 24, 2010

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Ogle County joined the alternative energy bandwagon in 2003 when it adopted an

amendment to its zoning ordinances to allow special use permits for the construction of windmills used to generate power. In 2005, Baileyville Wind Farms, LLC ("Baileyville") took the county up on its offer by applying for and receiving a special use permit to construct 40 windmills.

Patricia Muscarello evidently did not share the county's enthusiasm for wind energy. Muscarello owns land adjacent to the proposed site of the Baileyville wind farm. She voiced her opposition through the political process and, when that failed, she repaired to federal court. At that point, this garden variety zoning dispute morphed into a federal case against 42 defendants, including Baileyville, its corporate parents, and the various Ogle County political actors involved in the decision to grant the permit. Muscarello's complaint invoked twelve theories of recovery, based on the U.S. Constitution, the Illinois Constitution, Illinois statutes, and the common law. In addition to objecting to the process that the county had followed, she attacked everything in the outcome (or anticipated outcome) from the loss of kinetic energy, to what she calls "shadow flicker," to the risk of a blade being hurled onto her property.

The district court concluded that it could not reach the merits of her suit. Instead, it held that the federal court was not the proper forum in which her claims could be resolved. We agree. Baileyville and its corporate parents have cross-appealed from the district court's refusal to impose a stay of administrative proceedings (that might or might not have been commenced at the time the

court ruled) in Ogle County. Finding no abuse of discretion in that ruling, we affirm it also.

## I

We rely primarily on Muscarello's first and second amended complaints for this account of the pertinent facts, although we have added some undisputed material from the remainder of the record where necessary.

In late 2003, after a public hearing held by the Zoning Board of Appeals (the "ZBA"), the Ogle County Board of Commissioners (the "Board") adopted an amendment to the county zoning ordinances providing that special use permits would be available for systems that use wind energy and thereby reduce dependence on fossil fuels (the "Windmill Text Amendment").

In September 2005, Baileyville applied for a special use permit to build a wind-energy system on land in Ogle County adjacent to Patricia Muscarello's property. (Two other Muscarellos are involved in this case: Patricia Muscarello was represented by her son, Charles Muscarello, and she sued, among others, her husband, Marco Muscarello. For simplicity we refer to Patricia Muscarello as "Muscarello" and, where necessary, we refer to her husband as "Marco Muscarello.") Baileyville intended to construct 40 windmills, each of which was to be approximately 400 feet in height to the tip of the blade and 285 feet in diameter. The application specified the locations of the windmills on the property.

Some time between November 7 and December 13, 2005, the ZBA held public hearings on Baileyville's ap-

plication. On December 13, the ZBA issued its Findings of Fact in support of the application. On December 20, the Board issued the special use permit and adopted a Home Sellers Property Value Protection Plan (the "Protection Plan") to provide a mechanism for residential property owners to recover any diminution of value that resulted from the windmills if and when they decided to sell their homes. Nonresidential property owners were not eligible to take advantage of this procedure.

Muscarello objects to every stage of the process. On January 19, 2006, she filed her original complaint, in which she objected to the findings of fact for the Windmill Text Amendment, the Baileyville permit application, the notice for the public hearing, the public hearing itself, Baileyville's evidence at the hearing, the findings of fact for the special use permit, the decision to issue the permit, and the authorization of the Protection Plan. At the core of her substantive allegations is an assertion that the county has condoned an impermissible taking of her property. Muscarello presented a laundry list of charges in her first amended complaint; as she describes it, the issuance alone of the permit will harm her in numerous ways:

> (i) she will be deprived of the full extent of the kinetic energy of the wind and air as it enters her property.

> (ii) she will be deprived of the full extent of the Accessory Use under Division 5, Section 5.01(N) of the Zoning Ordinance.

(iii) her property will be subject to "shadow flicker" and reduction of light caused by the Wind Energy Conservation System.

(iv) she will have to endure severe noise caused by the Wind Energy Conservation System.

(v) ice may be physically thrown onto her property by the rotating blades.

[vi] there is risk of what she calls "blade throw," meaning that she fears that the rotor blades may come loose and be thrown onto her property.

[vii] the windmills will cause radar interference on her property.

[viii] the windmills will interfere with the reception on her cell phone network.

[ix] the windmills will disturb her GPS service.

[x] her property will be subject to wireless communication interference.

[xi] the system will interfere with her television signals.

[xii] the existence of the windmills will enhance her risk of sustaining damage from lightening.

[xiii] she will be exposed to higher levels of electromagnetic radiation.

[xiv] she will suffer injury from stray voltage; and

[xv] the windmills will prevent her from conducting crop-dusting operations on her fields.

We glean from all this, taking it in the light most favorable to Muscarello, that she believes that the pre-

scribed process was not followed and that the construction of windmills will have uncompensated adverse consequences for her and her fellow nonresidential property owners. Muscarello sued to stop the construction of the windmills and to require the Board to revoke the permit. To date, as far as the record before us reflects, no windmills have been constructed.

## II

Muscarello's complaint includes 12 counts based on the U.S. Constitution, the Illinois Constitution, Illinois statutes, and Illinois common-law rights; as we noted earlier, it names 42 defendants. For purposes of this appeal, we can group the defendants as follows: various entities and individuals acting on behalf of Ogle County ("Ogle County"); the parties of record in the administrative proceeding, including Marco Muscarello, plaintiff's husband; Baileyville, the permit-holder; Navitas Energy, Inc., sole shareholder, member, and owner of Baileyville; and Gamesa Corporacion Tecnologia, S.A., the corporate parent of Navitas. Baileyville, Navitas, and Gamesa have cross-appealed.

We divide our analysis of Muscarello's claims into three categories based on the type of jurisdiction pleaded: (1) section 1331 claims; (2) section 1332 claims; and (3) section 1367 claims. We discuss the applicable jurisdictional bases for each theory of recovery along with our discussion of the merits below. Here, we briefly summarize Muscarello's claims and the district court's disposition of them.

*1. Section 1331 Claims.* Muscarello alleges three viola-
tions of the Fourteenth Amendment of the U.S. Constitu-
tion: Count IV alleges a taking without just compensation;
Count VI alleges a denial of due process; and Count VIII
alleges a denial of equal protection. These counts stem
from Ogle County's grant of the special use permit to
Baileyville and the adoption of the Protection Plan that
provides compensation only to residential property
owners. Although the permit does not directly affect
Muscarello's land, she asserts that it represents an unrea-
sonable and illegal taking of her property, that the
process by which it was awarded was defective, and that
the Protection Plan unlawfully discriminates against
nonresidential property owners. The district court dis-
missed her takings and equal protection claims as unripe,
and it rejected her due process claim for failure to state
a claim upon which relief could be granted.

*2. Section 1332 Claims.* Two more of Muscarello's claims
are based on state common law (trespass, in Count X, and
nuisance, in Count XI); for them, she has invoked
diversity jurisdiction under 28 U.S.C. § 1332. In fact, she
appears to be relying on alienage jurisdiction rather
than diversity of citizenship, as one of the parties (Gamesa)
is a Spanish corporation. We discuss the jurisdictional
basis for these claims in greater detail below. On the
merits, although Muscarello concedes that the windmills
have yet to be constructed, she takes the position that
she can recover under trespass and nuisance theories
based solely on the county's decision to grant the
permit for the future windmills. The district court twice
dismissed these claims because Muscarello did not prop-

erly plead citizenship. On the third try, without finding jurisdiction, the district court rejected these speculative theories of trespass and nuisance as unripe.

*3. Section 1367 Claims.* Finally, Muscarello included seven counts asserting violations of Illinois law for which she relies on supplemental jurisdiction: Count I seeks a declaratory judgment under Illinois law for violations of local and state law; Count II seeks administrative review under the Illinois Administrative Review Act, 735 ILCS 5/3-101, *et seq.*; Count III requests a writ of certiorari under Illinois law; Count V claims an unlawful taking in violation of the Illinois Constitution; Count VII alleges a violation of due process under the Illinois Constitution; Count IX alleges a violation of equal protection under the Illinois Constitution; and Count XII seeks injunctive relief. The district court, after it dismissed the other counts for which Muscarello pleaded original jurisdiction, dismissed these claims under 28 U.S.C. § 1367(c)(3).

Muscarello appeals the dismissal of her twelve claims. In addition, cross-appellants appeal the district court's decision to deny their motion to stay administrative proceedings. We address the cross-appeal after we review Muscarello's arguments.

## III

We look first at the claims that allegedly arise under the federal Constitution's provisions relating to takings, due process, and equal protection. The district court

dismissed the takings and equal protection claims as unripe and the due process claim for failure to state a claim. Our review is *de novo* for all three of these rulings; we accept all of the well-pleaded, plausible factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009); *Patel v. City of Chicago,* 383 F.3d 569, 572 (7th Cir. 2004); *McCullah v. Gadert,* 344 F.3d 655, 657 (7th Cir. 2003).

## A

The core of Muscarello's claims is an allegation that Ogle County violated the Fourteenth Amendment of the U.S. Constitution through a violation of the Fifth Amendment's Takings Clause. The Takings Clause provides: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Muscarello asserts that Ogle County's decision to grant a permit to Baileyville constituted a taking without just compensation.

In order to invoke the protections of the Takings Clause, Muscarello must allege a taking of private property. Her complaint fails to meet that requirement. Muscarello does not allege any physical invasion of her property, a quintessential taking. See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 427 (1982) ("When faced with a constitutional challenge to a permanent physical occupation of real property, this Court has invariably found a taking."). Instead, she relies on the more elusive concept of the regulatory taking. See *Lucas*

*v. S.C. Coastal Council,* 505 U.S. 1003 (1992) (finding a regulatory taking only where "all economically beneficial or productive use of land" is denied). But here, the alleged economic effects are a far cry from the denial of all economically beneficial or productive use of the land. The *Lucas* Court was careful not to create the impression that all zoning decisions that may diminish an owner's potential uses of her property, or compel a less valuable use, are takings. See *Covington Court v. Vill. of Oak Brook,* 77 F.3d 177, 179 (7th Cir. 1996) ("We frequently have reminded litigants that federal courts are not boards of zoning appeals."). In order to qualify as a regulatory taking, the measure must place such onerous restrictions on land as to render it useless. Muscarello would have us turn land-use law on its head by accepting the proposition that a regulatory taking occurs whenever a governmental entity *lifts* a restriction on someone's use of land. We see no warrant for such a step. See *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 191-93 (2d Cir. 1994) (holding that residential land-owners had no property interest in the enforcement of zoning laws on adjacent property).

Even if we thought that Ogle County might have "taken" Muscarello's property when it issued the permit to Baileyville, Muscarello could not seek recovery in the way she has proceeded here. As we have observed in the past, in *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172 (1985):

> the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims

which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation.

*Forseth v. Vill. of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000). Muscarello concedes that she did not satisfy the exhaustion requirement. Therefore, her takings claim is unripe unless she is excused from that requirement. The district court found that Muscarello should not be excused, and we agree.

Muscarello attempts to save this part of her case through two exceptions to the exhaustion requirement: one for pre-enforcement facial challenges and one for situations in which relief is not available in state court. We conclude, however, that neither applies to this case. It is true that pre-enforcement facial challenges to the constitutionality of a law under the Takings Clause are not subject to the exhaustion requirement. See *San Remo Hotel, L.P. v. City & County of San Francisco,* 545 U.S. 323, 345-46 (2005) (citing *Yee v. Escondido,* 503 U.S. 519, 534 (1992)). But Muscarello's claim is not a pre-enforcement facial challenge. She has focused on the economic deprivation that she herself will suffer if and when the taking occurs—the characteristic "as applied" challenge. Although almost in passing she suggests that the alleged taking was not for a public purpose, this point is too undeveloped to require comment.

Second, plaintiffs are excused from the exhaustion requirement if state law does not provide relief. *Daniels v.*

*Area Plan Comm'n,* 306 F.3d 445, 455-56 (7th Cir. 2002). That rule does not fit Muscarello's case either, because Illinois provides ample process for a person seeking just compensation. See *Peters v. Clifton,* 498 F.3d 727, 733-34 (7th Cir. 2007). See also 735 ILCS 30/10-5-5 (providing a statutory basis for inverse condemnation actions under Illinois law); *Inn of Lamplighter, Inc. v. Kramer,* 470 N.E.2d 1205 (Ill. App. Ct. 1984) (noting that plaintiffs properly sought a *writ of mandamus* to compel an eminent domain action to compensate them for their alleged loss). Since Illinois law provides a remedy for Muscarello, her claims are not excused from the exhaustion requirement.

B

Muscarello also invokes federal-question jurisdiction for her claims that Ogle County violated the Equal Protection and Due Process Clauses. The district court dismissed Muscarello's equal protection claim for lack of ripeness, and the due process claim for lack of a protectable property interest. We consider these in turn.

The district court found that the equal protection claim was a takings claim in disguise, and thus that it too had to satisfy *Williamson County*. See *River Park v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir. 1994) ("Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court."). The district court was correct. Any equal protection claim based on a taking would be unripe and subject to all of the objections that

we have just reviewed in connection with the takings claim.

Even if we assumed that Muscarello has pleaded an equal protection claim that is distinct from her takings theory, this would shift the focus of attention to the disparate treatment under the ordinance of residents and nonresidents. But that raises a pure question of law—whether the county was entitled to draw such a line—and that kind of classification is subject to the deferential rational basis test. A plan to encourage alternative energy production by freeing land from existing restrictions while providing in advance for the compensation of homeowners reflects both legitimate ends and rational means. Nonresidential owners still have all remedies that Illinois law puts at their disposal, and so they are far from left out. Muscarello therefore has not stated an equal protection claim upon which relief can be granted.

Her due process theory is similarly deficient. A party must have a protectable property interest in order to state a claim for a violation of due process based on a regulatory taking. See *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9 (1978). The district court held that Muscarello does not have a property interest in the lifting of zoning restrictions on another's property. We agree. Muscarello is unable to describe a property interest that is not speculative (*e.g.* dependent on Baileyville's future trespass) or a disguised taking (*e.g.* diminution of investment-backed expectations). This is enough to find that she cannot state a due process claim. More-

over, even if she did have a protectable property interest, the process due in a zoning case is minimal and normally must be pursued in state courts. See *River Park,* 23 F.3d at 167.

**IV**

Muscarello also alleges two state common-law claims, which she apparently thinks fall outside the constitutional "case" she has presented under her federal theories (or otherwise she would be asserting supplemental jurisdiction, see 28 U.S.C. § 1367(a)), but for which she thinks jurisdiction is available under 28 U.S.C. § 1332. Count X alleges trespass and Count XI alleges nuisance. The district court dismissed these claims as unripe, because the windmills, which ostensibly would cause the nuisance or trespass, have not been built and it is thus impossible to know how they might trespass upon her property. The district court expressly declined to determine whether it had § 1332 jurisdiction, since Article III's case-or-controversy requirement is an alternative jurisdictional prerequisite. For the sake of completeness, however, we consider whether jurisdiction under § 1332 is secure, as this would supply an independent ground for dismissal if it is not. We then turn to the issue of ripeness.

**A**

Muscarello's trespass and nuisance claims were brought against Baileyville, a limited liability company;

Navitas Energy, its sole shareholder and owner; Gamesa, the corporate parent of Navitas; the Board; and the ZBA. She failed to plead citizenship properly in her original complaint, but the district court granted her leave to file an amended complaint to remedy those errors. Unfortunately, her amended complaint also fell short, and so the district court granted her a third bite at the apple. As pleaded in her final amended complaint, Muscarello has alleged that she is a citizen of Arizona and that none of the defendants is a citizen of that state.

When the facts that determine federal jurisdiction are contested, the plaintiff must establish those facts by a preponderance of the evidence. *Ill. Bell Tel. Co. v. Global Naps Ill., Inc.,* 551 F.3d 587, 590 (7th Cir. 2008). Since the district court did not make a finding on complete diversity, this court must approach the question *de novo*.

We must begin, however, with Muscarello's own citizenship, because the defendants contest her allegation of Arizona citizenship and assert that she, like her defendant-husband, is a citizen of Illinois. (It seems that Muscarello's decision to include her husband as a defendant was based on an erroneous reading of § 5/3-107 of the Administrative Review Act of Illinois, but her reasons are of no concern to this appeal.) The record contains enough evidence to support a finding that Patricia Muscarello is domiciled in Arizona. She submitted an affidavit that swears to the following facts: in 2001 she moved her state of permanent residence from Illinois to Arizona; she has intended to remain domiciled there ever since; and she spends more than seven

months per year in Arizona. She is registered to vote in Arizona, has a driver's license in Arizona, listed her Arizona address with Medicare and Social Security, listed her Arizona address on various property tax bills for Illinois properties, and even received notices from Ogle County regarding Baileyville's Special Use Permit in Arizona. The evidence with which the defendants countered her affidavit is easily dismissed. They point to her husband's uncontested Illinois citizenship, an Illinois driver's license for Patricia that expired before the complaint was filed, her ownership of property in Illinois, and her statement that she lived in Illinois full-time until at least 2001. Defendants also offer some tax bills that list an Illinois address, including one that claims a homestead exemption for Illinois. Although the last item might give one pause, on balance we find that Muscarello sufficiently established her Arizona domicile.

Next, we turn to the defendants. In order to support jurisdiction under § 1332, Muscarello must establish complete diversity with the defendants. We begin with the institutional Ogle County defendants: the Board and the ZBA. Both entities are citizens of Illinois. See *Illinois v. City of Milwaukee*, 406 U.S. 91, 97 (1972) ("It is well settled that for purposes of diversity of citizenship, political subdivisions are citizens of their respective States.").

Baileyville is next. It is a limited liability corporation, and thus we must look to the citizenship of each of its members to determine its citizenship for diversity purposes. *Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 267 (7th Cir. 2006). (Muscarello missed this point, but the record

contains the necessary information.) The record indicates that Navitas, which is a Minnesota corporation with its principal place of business in that state, is the sole shareholder, member, and owner of Baileyville.

Finally, we look at Gamesa, Navitas's parent corporation since 2003. Gamesa is a publicly traded Spanish company with its seat in Spain. It therefore is classified as an alien. Under 28 U.S.C. § 1332(a)(3), the federal courts have original jurisdiction over civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." Thus, from the point of view of citizenship, diversity of citizenship (or alienage) is satisfied.

That leaves the amount-in-controversy requirement of § 1332, under which Muscarello had to allege that more than $75,000 is in controversy. She has so alleged, and in the absence of any challenge from the defendants, we see no reason why this should not be the case, especially since this circuit follows the "either viewpoint" rule. See *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609 (7th Cir. 1997) (citing *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 393-95 (7th Cir. 1979)).

B

If Muscarello's trespass and nuisance claims were ripe, we would be able to consider them. But we conclude, as did the district court, that they are not. This provides an independent ground for dismissal.

The windmills have not been built yet, and so it is difficult to see how they might either be causing a

trespass on Muscarello's land or creating a nuisance. Muscarello tries to argue that the permit itself creates an "interference with her property and her property rights," but this is too metaphysical for us. We cannot see how the permit, unexercised, causes a trespass or nuisance as Illinois law conceptualizes those causes of action. *In re Chicago Flood Litigation*, 680 N.E.2d 265, 277-78 (Ill. 1997), provides that nuisance and trespass both require an invasion. Nuisance requires only a perceptible invasion, but the permit did not even lead to this minor effect. Trespass is even tougher; it is usually defined by a "crass physical invasion." *Id.* at 205. Obviously the permit did not march onto Muscarello's land, nor, as far as this record shows, did any of the defendants in the effort to start building their wind facility. Limiting her claims to the permit, as she must, Muscarello cannot succeed at this time under either a nuisance or trespass theory.

## V

We next turn to the seven claims for which Muscarello pleaded supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The district court elected to dismiss these claims, as authorized by § 1367(c)(3). We see no abuse of discretion in that action, as far as it goes. The only question is whether, since diversity might provide an alternative basis of subject-matter jurisdiction, the court should have retained them on that basis. Muscarello never asked it to do so, however, and so the question is even narrower: should the court have investigated other potential grounds for its jurisdiction that were not asserted?

It is well established that the burden of establishing proper federal subject-matter jurisdiction rests on the party asserting it—here, the plaintiff. See *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."). That said, the rule in this circuit has been that the "court's discretion to dismiss for lack of subject matter jurisdiction when the plaintiff could have pleaded the existence of jurisdiction and when in fact such jurisdiction exists, should be exercised sparingly." *Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.,* 523 F.2d 543, 549 (7th Cir. 1975) (citing *Littleton v. Berbling,* 468 F.2d 389, 394 (7th Cir. 1972), rev'd on other grounds sub nom., *O'Shea v. Littleton,* 414 U.S. 488 (1974)). But to say that dismissals under these circumstances should be rare does not mean that this step is never appropriate. See, *e.g.*, *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 849 F.2d 1197 (9th Cir. 1988) (remanding the case with instructions to dismiss for lack of jurisdiction, and expressly declining to determine whether jurisdiction existed under § 1332 because the parties did not plead it). In *Littleton*, *supra,* immediately after acknowledging the principle that a court usually should not dismiss a case just because the plaintiff failed to articulate a basis for jurisdiction that was evidently proper, we cautioned that "the ultimate duty of pleading his case rests upon the party and not upon the district court to divine what is not reasonably there." 468 F.2d at 394.

Here, as we have already pointed out, the district court gave Muscarello at least three opportunities to come up

with proper jurisdictional allegations. We followed up at oral argument with the question why she had not pleaded alienage or diversity of citizenship for these seven counts, and then essentially walked her through the application of § 1332 to these claims. (As we implied earlier, it is at least theoretically possible that some or all of these theories do not "form part of the same case or controversy under Article III of the United States Constitution," as required by § 1367(a), and thus could be pursued only if diversity or alienage jurisdiction is present. For anything that fell outside the supplemental jurisdiction, dismissal was required, not discretionary, unless Muscarello could point to an independent basis of jurisdiction.) Parties may correct defective allegations of jurisdiction even during trial or appeal, 28 U.S.C. § 1653, yet Muscarello has not availed herself of that opportunity for her seven supplemental counts.

We are not inclined in this case to make Muscarello's jurisdictional arguments for her. As matters stand, she is free to proceed on these seven counts in state court, if she so chooses, and so she is not seriously prejudiced by the district court's action. "[T]he plaintiff is absolute master of what jurisdiction he will appeal to." *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915). We find that this plaintiff also is the absolute master of what jurisdiction she will eschew.


## VI

Finally, we address Baileyville's motion to stay administrative proceedings. An Ogle County ordinance

provides that special use permits expire after one year unless construction or use has commenced. On July 28, 2008, Baileyville filed a motion seeking a stay of any administrative proceeding to enforce this time period against it before this litigation is complete. The district court denied this motion, and Baileyville has cross-appealed to this court.

Section 5/3-111(a) of the Illinois Administrative Review Act provides that the Illinois Circuit Court has the power "to stay the decision of the administrative agency in whole or in part pending the final disposition of the case." 735 ILCS 5/3-111(a)(1). In *Gold v. Kamin*, 524 N.E.2d 625 (Ill. App. Ct. 1988), the Illinois Court of Appeals held that land-use litigation does not excuse a party from the expiration of a permit if the party did not request an administrative stay during the litigation. *Id.* at 627-28. See *Homeowners Organized to Protect the Env't, Inc. v. First Nat'l Bank of Barrington,* 521 N.E.2d 1202, 1206 (Ill. App. Ct. 1988) (affirming the trial court's decision to stay the expiration of a permit during litigation). Fearing a repeat of *Gold*, Baileyville requested that the district court—which it viewed as the equivalent of the Illinois Circuit Court—issue a stay of any administrative proceedings to terminate the permit, even though no such proceedings have begun and Baileyville has no reason to believe that Ogle County will commence them.

The district court dismissed Baileyville's request for a stay, finding that it lacked jurisdiction over the case as a whole and that the statute was inapplicable since Baileyville could not identify a particular administra-

tive action it wanted the court to stay. The district court also cited federalism concerns in "direct[ing] the Ogle County Board how to enforce its zoning ordinances."

Illinois courts review the decision to grant administrative stays for an abuse of discretion, and we too would treat such a decision deferentially. See *Douglas Transit, Inc. v. Ill. Commerce Comm'n,* 495 N.E.2d 620, 623 (Ill. App. Ct. 1986). We find no abuse of discretion on these facts. Ogle County and Baileyville have worked together to get this project off the ground, and apparently the ZBA has represented in another action that it believes that Baileyville has satisfied the permit's "commencement of use" requirement. The district court reasonably could have found that there was no need for judicial action under those circumstances.

* * *

We hold that Muscarello's federal takings, equal protection, and due process theories failed to state a claim upon which relief could be granted. Her state-law trespass and nuisance theories are not ripe for consideration. Finally, she failed to avail herself of the opportunity to allege and support an independent basis of federal subject-matter jurisdiction over the other seven claims. The district court was thus entitled to dismiss those claims without prejudice under § 1367(c)(3). With respect to Baileyville's cross-appeal, we hold that the district court did not abuse its discretion in denying the motion for an administrative stay. We therefore AFFIRM the judgments of the district court.