DELBERT M. PATZNER, Petitioner-Appellee, v. GREGORY W. BAISE, Secretary of the Department of Transportation, *et al.*, Respondents-Appellants.

Second District   No. 2—88—0174

Opinion filed November 1, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, Michael Luke, Assistant Attorney General, of Springfield, and James E. Dixon, of Dixon, of counsel), for appellants.

William P. Fearer II, of Fearer, Nye, Ahlberg & Chadwick, and Williams & McCarthy, both of Oregon (Elizabeth A. Hegel, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondents, Gregory W. Baise, Secretary of the Department of Transportation of the State of Illinois, and the Department of Transportation of the State of Illinois (Department), appeal from the trial court's order issuing a writ of *mandamus* directing Baise to institute condemnation proceedings against property owned by petitioner, Delbert M. Patzner. The issue on appeal is whether the circuit court had jurisdiction to issue a writ of *mandamus* compelling the institution of an eminent domain action where petitioner's property was not taken for public use. We reverse.

Petitioner owns a parcel of property located on what is now known as Seventh Street in Rochelle, Illinois. The property is improved with a commercial building from which petitioner previously operated a real estate business. Prior to 1980, the roadway fronting petitioner's property was designated as U.S. 51. Petitioner's property occupied 69 feet of frontage along U.S. 51 and had direct access to that highway. Sometime in 1980, the Department began a construction project to elevate U.S. 51 above a railroad right-of-way and vari-

ous intersections in Rochelle. The overpass, now designated as Illinois Route 251, was constructed directly above that portion of U.S. 51 fronting petitioner's property. No part of petitioner's property was taken to accommodate the overpass; however, the parking area on petitioner's property was frequently occupied by construction machinery during the period of construction. As a result of the construction, petitioner's property is now located immediately adjacent to the overpass, and the ground level roadway fronting petitioner's property is located directly under the overpass and terminates in cul-de-sacs immediately north and south of petitioner's property. Petitioner vacated the property in December 1983 and relocated his real estate business.

On February 15, 1985, petitioner filed his petition for a writ of *mandamus* to compel Baise to institute eminent domain proceedings to compensate petitioner for the taking and damaging of his property. A previous petition filed against Baise's predecessor at the Department was dismissed for lack of jurisdiction on the basis that petitioner's property was damaged rather than taken and his remedy therefore lay in the Illinois Court of Claims. Based on that court's order, respondents in the instant action moved to dismiss petitioner's second petition arguing that it was barred under the doctrine of *res judicata*. The trial court denied respondents' motion, and this court affirmed on the basis that dismissal of the first petition for lack of jurisdiction did not operate as an adjudication on the merits and was therefore not *res judicata* as to the second petition. See *Patzner v. Baise* (1986), 144 Ill. App. 3d 42, 43-44.

On October 27, 1987, petitioner filed his amended petition for a writ of *mandamus* alleging that the Department, by constructing the overpass, (1) trespassed on petitioner's property by parking construction vehicles on it; (2) eliminated the air, light, and view serving petitioner's property; and (3) eliminated the practical access from petitioner's property to Illinois Route 251. After a hearing on that petition, the trial court found that petitioner had suffered damage and a taking by the Department. The court ruled that a writ of *mandamus* would issue and further ordered Baise to commence condemnation proceedings within 30 days following issuance of the writ. The court subsequently entered a written order in accordance with its oral ruling, and respondents brought this timely appeal.

Respondents contend that the circuit court did not have jurisdiction to issue a writ of *mandamus* compelling respondents to institute eminent domain proceedings since no portion of petitioner's property was actually taken for public use. Respondents argue that to the extent petitioner's property was damaged by elevation of the highway,

his sole remedy as against the State is an action for damages brought in the Illinois Court of Claims. We agree.

■■ We begin our analysis by noting that the Illinois Constitution provides that "[p]rivate property shall not be taken *or damaged* for public use without just compensation." (Emphasis added.) (Ill. Const. 1970, art. I, §15.) Our supreme court has nonetheless distinguished between property "taken" and property which is merely "damaged" as the result of a public improvement. (See *Horn v. City of Chicago* (1949), 403 Ill. 549, 554.) In *Horn*, the court stated that where the construction of a public improvement results in the *actual physical invasion* of property, it constitutes a "taking" within the meaning of the Constitution. (403 Ill. at 554.) However, where there has been a loss or impairment of access absent an actual physical invasion, the property is said to have been "damaged." (See *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 271.) The distinction between property "taken" and property "damaged" is important as it is generally held that a property owner is not entitled to have condemnation proceedings instituted to determine damages occasioned by a public improvement where no part of the property has been taken. (See *Horn*, 403 Ill. at 554.) The court characterized damage to property not taken as "consequential," and went on to note that a property owner suffering such damage is not deprived of his constitutional right to just compensation where he is remitted to an action at law to recover for that damage. (403 Ill. at 559.) However, the court has also acknowledged that constitutional limitations on bringing actions for damages against the State would result in those property owners being left without a remedy. (See *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289, 291-92.) To alleviate this constitutional conflict and ensure that a remedy is available to property owners whose property is damaged as a result of a State improvement project, the court has in some cases permitted *mandamus* to issue compelling a State official to institute eminent domain proceedings. See 369 Ill. at 292-93; see also *People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513, 516; *People ex rel. O'Meara v. Smith* (1940), 374 Ill. 286, 290.

Notwithstanding *Kingery* and its progeny, the Appellate Court for the Fifth District recently considered the precise issue pending before this court in a case equally identical on its facts and held that the circuit court did not have jurisdiction to issue a writ of *mandamus* to compel the institution of eminent domain proceedings where property was damaged but not taken. (*Rothschild v. Baise* (1987), 157 Ill. App. 3d 481, 486.) Focusing on the distinction between property "taken"

and property "damaged," the *Rothschild* court engaged in an extensive analysis of the early supreme court decisions and addressed the effect modern constitutional and legislative developments have had on the continued validity of *mandamus* as a remedy where property has been damaged but not taken. (157 Ill. App. 3d at 484-85.) A similar analysis is imperative to an understanding of our disposition.

In 1938, our supreme court decided the case of *People ex rel. First National Bank v. Kingery* (1938), 369 Ill. 289. The issue before the court in that case was whether a property owner could compel the institution of eminent domain proceedings to obtain compensation for the loss of access to her property when the roadway fronting her property was lowered 20 feet. (369 Ill. at 290-91.) At that time our constitution provided, as it does today, that "[p]rivate property shall not be taken or damaged for public use without just compensation." (Ill. Const. 1870, art. II, §13; see *Kingery,* 369 Ill. at 291.) However, the 1870 Constitution further provided that the State could not be made a defendant in any court of law or equity. (Ill. Const. 1870, art. IV, §26; see *Kingery,* 369 Ill. at 291.) The *Kingery* court nonetheless recognized that the petitioner was entitled to a remedy for damage to her property and therefore construed the action as against the director of the State department involved in the dispute and not against the State. (*Kingery,* 369 Ill. at 292.) In so holding, the court ruled that a writ of *mandamus* action would lie to compel the State official to institute eminent domain proceedings. 369 Ill. at 293.

The General Assembly subsequently enacted legislation vesting exclusive jurisdiction over damage claims against the State, including claims for just compensation for property damaged for public use, in the Court of Claims. (See *O'Meara,* 374 Ill. at 288.) That legislation was found to be unconstitutional in *O'Meara,* and the *O'Meara* court continued to apply the holding in *Kingery. O'Meara,* 374 Ill. at 288-90; see also *Rosenstone,* 16 Ill. 2d at 516 (following *Kingery* and *O'Meara* even though legislation concerning the Court of Claims had since been amended; *Rosenstone* also involved a physical invasion to property by occasional overflow of water).

Since *Kingery, O'Meara,* and *Rosenstone* were decided, the people of Illinois have adopted a new constitution in which the doctrine of sovereign immunity was abolished "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, §4.) The General Assembly subsequently exercised that constitutional authority by enacting legislation reinstating sovereign immunity "except as provided in 'AN ACT to create the Court of Claims ***.' " (See Ill. Rev. Stat. 1985, ch. 127, par. 801; see also *Herget National Bank v. Kenney*

(1985), 105 Ill. 2d 405, 408.) Pursuant to the act creating it, the Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any law of the State of Illinois." (Ill. Rev. Stat. 1985, ch. 37, par. 439.8(a).) The constitutionality of the act creating the Court of Claims has recently been upheld by our supreme court. (*S. J. Groves & Sons Co. v. State of Illinois* (1982), 93 Ill. 2d 397, 407 *overruled in part on other grounds sub nom. Rossetti Contracting Co. v. Court of Claims* (1985), 109 Ill. 2d 72, 79.) Thus, as a result of this legislation, property owners whose land is damaged but not taken are no longer without a remedy for that damage, and *Kingery* and its progeny permitting *mandamus* to issue in such a case would no longer appear to be valid. See *Rothschild,* 157 Ill. App. 3d at 485-86.

In holding that a public improvement which results in a "damaging" without a "taking" is not a proper subject for *mandamus* proceedings, the *Rothschild* court relied on an earlier decision before that court (see *Lake Ka-Ho, Inc. v. Kramer* (1985), 131 Ill. App. 3d 782, 786) and our supreme court's decision in *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill. 2d 265, 271. (*Rothschild,* 157 Ill. App. 3d at 486.) In *Granite City Moose Lodge No. 272,* a property owner sought a writ of *mandamus* to compel the secretary of the Department and Granite City to institute eminent domain proceedings to compensate the property owner for the elimination of access when the roadway fronting that property was elevated as an overpass. (*Granite City Moose Lodge No. 272,* 96 Ill. 2d at 267.) The State appealed to the supreme court after the appellate court reversed an order dismissing the petition on the State's motion. (96 Ill. 2d at 267.) The court concluded that the State could not be compelled to institute condemnation proceedings since the State did not sufficiently participate in the alleged taking of the property. (96 Ill. 2d at 269.) The court noted that the construction was undertaken for the benefit of the city, the right-of-way necessary for the construction was acquired in the city's name, and the city had the primary responsibility concerning the details of the construction, maintaining the improvement, and regulating its use. (96 Ill. 2d at 269.) The court further noted that the city was required to reimburse the State for most of the costs of the improvement. 96 Ill. 2d at 269.

The court then went on to state:

> "We note parenthetically that, even if the State were to be held responsible for the alleged condemnation, it is certainly questionable whether a writ of *mandamus* would be the appropriate remedy." (96 Ill. 2d at 269.)

The court distinguished *Rosenstone*, the supreme court case relied on by the property owner, on the basis that in *Rosenstone* there was no other remedy against the State and no other party against whom the property owner could seek a remedy. (96 Ill. 2d at 270; see also *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247, 250 (writ of *mandamus* similarly sought against State and city; court held that reasoning of *Kingery* and *O'Meara* was not applicable because the property owner had a remedy against a party other than State).) The court stated:

> "There is no question that a property owner suffers compensable damages if his access to an abutting street is taken or materially impaired. [Citations.] However, a loss or impairment of access does not involve an actual physical invasion of the property, and it therefore constitutes a 'damaging,' rather than a 'taking,' of the property. [Citations.] 'We have repeatedly held that an abutting property owner is not entitled to have condemnation proceedings instituted to determine damages to his property occasioned by a public improvement where no part of his property is physically taken and that the city or other authorized sovereign constructing such improvement is not required, under the constitution or the Eminent Domain Act or any other law or statute, to institute condemnation or other proceedings to ascertain such damages.' [Citations.]'' 96 Ill. 2d at 271-72.

Petitioner argues that the supreme court's analysis of whether *mandamus* would be proper in *Granite City Moose Lodge No. 272* is *dicta* and should not be followed in the instant action. Petitioner further cites the later supreme court decision in *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 411, for the proposition that "requir-[ing] the property owner to bring his proceeding in the Court of Claims would run afoul of Article I, Section 15 of the Illinois Constitution which guarantees a litigant the right to jury determination of just compensation of property taken or damaged for public use." *Herget National Bank* is distinguishable, however, as that court specifically noted that in that case "there [was] a physical invasion and taking of the property in question." (105 Ill. 2d at 410.) Since there has been no taking here, it would appear that petitioner's remedy lies in the Court of Claims.

We nonetheless note, as did the *Rothschild* court before us, that a contrary result was reached by the Appellate Court for the Fourth District in *Inn of the Lamplighter, Inc. v. Kramer* (1984), 128 Ill. App. 3d 317. The *Rothschild* court declined to follow *Inn of the Lamplighter, Inc.* for the reason that the court in that case relied on

*Kingery* and its progeny, which were of questionable validity in light of the subsequent constitutional and legislative developments. (*Rothschild*, 157 Ill. App. 3d at 484.) We similarly believe that *Inn of the Lamplighter, Inc.* was wrongly decided and decline to follow it.

In *Inn of the Lamplighter, Inc.*, the property owners sought a writ of *mandamus* to compel condemnation proceedings and obtain compensation for the loss of access to their property caused by the closure of a highway frontage road. (128 Ill. App. 3d at 318-19.) The respondents' motion to dismiss for lack of jurisdiction was granted, and the appellate court reversed. (128 Ill. App. 3d at 319.) Although the court recognized the subsequent constitutional and legislative developments apparently intended to overcome the *Kingery* line of cases, it nonetheless gave them no effect. (See 128 Ill. App. 3d at 320-21.) Rather, the court noted that the "common thread" throughout the *Kingery* line of cases was that the State was the only defendant. (128 Ill. App. 3d at 321.) Citing *Granite City Moose Lodge No. 272* and *Rosenfield*, the court determined that where the State is not the only defendant, the reasoning in *Kingery* and *O'Meara* would not be applicable. (128 Ill. App. 3d at 321-22.) The court went on to note that the State was the only defendant in the case before it; therefore *Kingery* and its progeny were applicable. (128 Ill. App. 3d at 322.) The court concluded that the Court of Claims offered no remedy for damages in the case before it because *O'Meara* and *Rosenstone* specifically held against it. 128 Ill. App. 3d at 322.

In our view, the court in *Inn of the Lamplighter, Inc.* mischaracterized the "common thread" running through *Kingery* and its progeny. While it is true that a department or officer of the State was the only defendant in those actions, it seems clear that the court was most concerned with the *availability of a remedy.* (See *Granite City Moose Lodge No. 272*, 96 Ill. 2d at 270; *Kingery*, 369 Ill. at 292; see also *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 301.) The *Kelly* case is particularly instructive on this point wherein the court explained its prior decision in *Kingery*, stating:

> "Counsel for [property owners] here argue that [*Kingery*] is a modification of the rule laid down in previous cases in which it had been held that for his damages to land not taken the landowner is remitted to an action at law. This court, in the *Kingery case*, *** held, that under the facts of that case, and since section 13 of article II of the constitution assures compensation for property damaged as well as that taken, petitioner should be held entitled to a *mandamus* writ against the Director to compel eminent domain proceedings; that as a common

law action may not be maintained against the State, *mandamus* against the Director was the only remedy open to the petitioner, and to hold that petitioner did not have that remedy would be to render ineffective the provisions of the constitution cited above herein. The opinion in that case does not purport to overrule the cases theretofore decided by this court, and, as applied to the facts of that case, it is correct. The remedy by it supplied to a property owner is the only remedy he has in such factual situations, and this court is empowered in such a case to render effective the mandate of section 19 of article II of the constitution." *Kelly*, 379 Ill. at 301.

The subsequent creation of a Court of Claims with exclusive jurisdiction over damage claims arising against the State clearly provides a remedy for property owners whose land is damaged but not taken. (See *Rothschild*, 157 Ill. App. 3d at 485.) While the remedy afforded through the Court of Claims does not permit a *jury* to determine compensation (see *Inn of the Lamplighter, Inc.*, 128 Ill. App. 3d at 322), our supreme court has acknowledged that the inequities favoring the State in that forum are more appropriately corrected by the legislature (*S. J. Groves & Sons Co.*, 93 Ill. 2d at 406-07).

In our view, *Granite City Moose Lodge No. 272* and *Rothschild* are dispositive of this appeal. However, we are not unmindful that the trial court and petitioner rely heavily on a prior decision of this court concerning property affected by the same construction project that affects the property in the instant action. (See *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615.) In *Rasmussen*, the Department filed a petition to condemn a three-year construction easement along the edge of the defendants' property to facilitate the construction of the overpass. (108 Ill. App 3d at 618.) At trial, the defendants received compensation of $1,800 for the easement and further received compensation of $31,530 as damages for their property *not taken*. (108 Ill. App. 3d at 618.) On appeal, the Department argued that the trial court erred in finding that the defendants suffered a constitutionally compensable impairment of access to and from their property as a result of the construction of the overpass since the defendants still had access to the ground level street. (108 Ill. App. 3d at 618-19.) This court characterized the Department's contention as an "oversimplification" and stated that "access to the property was materially impaired when the old route was cut off in both a north and south direction by the abutments of the overpass, and by the closing of a direct access railroad grade crossing." (108 Ill. App. 3d at 619.) In so ruling, the court distinguished the severity of impairment

in that case from cases involving only technical or formal disturbances creating an uncompensable delay of access. (108 Ill. App. 3d at 623-24.) Of particular significance to the court was not merely the change in use of the highway, but rather the change in the physical characteristics of the highway in relation to the subject property. (108 Ill. App. 3d at 622.) The court concluded that the practical difference between accessibility of the highway before and after the construction was significant and material with the result that defendants were entitled to recover damages. 108 Ill. App. 3d at 624.

We do not find our prior decision in *Rasmussen* authority for petitioner's contention that a writ of *mandamus* lies against the Department where property has been damaged but not taken. We note that the action in *Rasmussen* was brought *by the Department to condemn a portion of the property* and therefore involved property taken. (108 Ill. App. 3d at 618.) In addition, no writ of *mandamus* was sought, and the propriety of that relief was not at issue. (See *Granite City Moose Lodge No. 272*, 96 Ill. 2d at 269-70 (similarly distinguishing *Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131).) Therefore, we reject any interpretation of the *Rasmussen* decision supporting an inference that a circuit court has jurisdiction to issue a writ of *mandamus* to compel an eminent domain action where property has been damaged but not taken.

Accordingly, we hold that a writ of *mandamus* does not lie against respondents since there has not been a physical invasion and therefore "taking" of the property. Petitioner's remedy lies solely in the Court of Claims, which has exclusive jurisdiction in actions for damages brought against the State. Our holding applies to petitioner's claim of damage as to each allegation of his petition, including elimination of practical access; elimination of light, air, and view; and trespass. With respect to petitioner's contention regarding trespass, we note that the court in *Granite City Moose Lodge No. 272* specifically rejected a similar argument after concluding that such an injury refers to consequential damages, not a taking, and is therefore recoverable in an action at law. 96 Ill. 2d at 272.

For the reasons set forth above, the judgment of the circuit court of Ogle County is reversed.

Reversed.

LINDBERG, P.J., and UNVERZAGT, J., concur.